Argued and submitted April 1, affirmed May 20, 1992

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL SHANNON EVANS,
*Appellant.*

## (91-1048; CA A71112)

832 P2d 460

William S. Brennan, Portland, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant was convicted of conspiracy to commit murder, ORS 161.450; ORS 163.005, conspiracy to commit theft, ORS 161.450; ORS 164.055, and conspiracy to possess a controlled substance. ORS 161.450; ORS 475.992. The charges arose after defendant and co-conspirators planned to kill Milosevich, who purported to be a cocaine dealer, but was actually an undercover Washington police officer. Milosevich and defendant made arrangements for a cocaine sale. On April 10, 1991, at about 6:50 p.m., an informant, Morton, notified police that the conspirators planned to kill Milosevich and to steal whatever cocaine and money he brought with him to the sale.

At about 7:30 p.m., Morton advised police that the conspirators would be arriving at his Longview, Washington, residence to take him to Rainier, Oregon, where they would develop the plan to kill Milosevich. Washington police were advised by Oregon police that, because of the exigencies of the situation, the threat to human life and the investigation regarding controlled substances, a court order for permission to intercept communications was not necessary. A "body wire" was then placed on Morton while he was in Longview, Washington. The conspirators arrived about a half-hour after the agreed time, and Morton went with them to a motel in Rainier, Oregon. Police tape-recorded their conversation. Milosevich was to be lured to a remote area of Columbia County on the pretext of making the proposed sale. He was to be killed and buried there. On April 11, when Morton and Milosevich met the conspirators and started to the place where the cocaine sale was supposed to occur, they were intercepted and stopped by police.

■       Defendant assigns error to the denial of his motion to suppress evidence obtained as a result of the "body-wiring" of Morton on April 10. He argues that the police violated Oregon statutes governing interception of communications, because there were no exigent circumstances to justify the interception without a court order, as required by ORS 133.724 or ORS 133.726.[1]

---

[1] ORS 133.724(1) states, in part:

"An ex parte order for the interception of wire, electronic or oral communications may be issued by any circuit court judge upon written application made

There was no error. ORS 165.540 provides, in part:

"(1)    Except as otherwise provided in ORS 133.724 or subsections (2) to (7) of this section, no person shall:

"* * * * *

"(c)    Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if all participants in the conversation are not specifically informed that their conversation is being obtained.

"* * * * *

"(5)(a)    The prohibitions in paragraph (c) of subsection (1) of this section do not apply:

"(A)    When a law enforcement officer obtains a conversation between the officer or someone under the officer's direct supervision pursuant to a court order under ORS 133.726, providing the person who obtains or records the conversation does not intentionally fail to record and preserve the conversation in its entirety.

"(B)    When a law enforcement officer obtains a conversation between the officer, or someone under the direct supervision of the officer, and a person who the officer has probable cause to believe has committed, is engaged in committing or is about to commit a crime punishable as a felony under ORS 475.992 or 475.995 or the circumstances at the time the conversation is obtained are of such exigency that it would be unreasonable to obtain the court order under ORS 133.726, providing the person who obtains or records the conversation does not intentionally fail to record and preserve the conversation in its entirety.

"* * * * *

"(6)    The provisions of paragraph (c) of subsection (1) of this section do not apply to a person who records a conversation during a felony that endangers human life."

---

upon oath or affirmation of the individual who is the district attorney for the county in which the order is sought."

ORS 133.726(1) states, in part:

"An ex parte order for the obtaining of any conversation in any county of this state under ORS 165.540(5)(a) may be issued by any judge [authorized to issue a search warrant] upon written application made upon oath or affirmation of the district attorney for the county in which the order is sought or upon the oath or affirmation of any peace officer."

Milosevich's dealings with defendant gave police probable cause to believe that the conversation in Rainier would pertain, at least in part, to the proposed purchase and possession of cocaine, a crime punishable under ORS 475.992(4). The interception of the conversation was lawful under subsection (5)(a)(B). We need not decide whether it was also lawful under subsection (6).

■ Defendant next assigns error to the sentencing court's ranking of the conviction of conspiracy to commit murder at category 11 on the Crime Seriousness Scale of the sentencing guidelines. Conspiracy is an unranked offense under the guidelines and is sentenced according to OAR 253-04-004:

> "Except for ORS 163.095-163.105 Aggravated Murder, when a person is convicted of any other felony or crime punishable by state imprisonment which is omitted from the Crime Seriousness Scale, the sentencing judge shall determine the appropriate crime category for the current crime of conviction and shall state on the record the reasons for the offense classification."

Under the guidelines, murder is ranked in category 11. Defendant argues that conspiracy to commit murder should be ranked at a lower level by a sentencing court. He makes no constitutional challenge but contends that ranking conspiracy to commit murder in the same category as murder violates pre-guidelines statutes. Before the passage of the guidelines, murder was an unclassified felony, but conspiracy to commit murder was classified as a class A felony. ORS 161.405. Under the former sentencing scheme, a person convicted of murder was subject to life imprisonment, with a ten-year minimum. ORS 163.115. A conviction for conspiracy to commit murder, as a class A felony, carried a maximum prison term of 20 years. ORS 161.605. Defendant contends that for a sentencing court to rank conspiracy to commit murder in the same category as murder increases the statutory punishment for conspiracy without any specific legislative act.

However, there has been a legislative determination: Felonies committed on or after November 1, 1989, must be sentenced in accordance with the guidelines, ORS 137.010(1), and the guidelines sentence does not depend on whether the

felony was classified or unclassified. There is no issue in this appeal about that situation. When the legislature enacted the guidelines, it was aware that murder was not a classified felony, that conspiracy to commit murder was a classified felony and that the respective punishments for the crimes differed. However, it did not maintain that punishment distinction in the guidelines. Instead, it gave the sentencing court the discretion to rank conspiracy to commit murder in the same crime seriousness category as the completed act of murder. *See* OAR 253-04-004, *supra.*

■ Our review of a judicial ranking of an otherwise unranked offense is limited to whether the court's reasons for ranking the offense are made on the record and whether the reasons reflect a proper exercise of the court's discretion. *State v. Rathbone II*, 110 Or App 419, 422, 823 P2d 432 (1991). The court referred to the principles employed in determining rankings as described in the commentary to OAR 253-04-002.[2] It expressed its view that conspiracies are especially serious. It noted that people do things in concert that they would not do alone, which, in defendant's case, involved "considering going out and butchering another human being for a few bucks or for some controlled substance." In ranking the conviction, it cited the need for protection from personal assault. On that record, we find no error.

Affirmed.

---

[2] The commentary to OAR 253-04-002, provides, in part:

"Three rules were used to rank each offense [on the Crime Seriousness Scale]:

"Rule 1. The primary factor in ranking crime seriousness is the harm or threat of harm to the societal interests the legislature intended to protect by making the particular conduct a crime.

"Rule 2. The three primary societal interests are in order of importance:

"(a) Protecting the individual from personal assault.

"(b) Protecting individual rights to property.

"(c) Protecting the integrity of governmental institutions.

"Rule 3. Except where specific intent is a statutory element of the offense, specific facts indicating the offender's personal blameworthiness in an individual case should only be considered to determine whether aggravating or mitigating circumstances exist." Commentary, *Oregon Sentencing Guidelines Manual* 12 (1985).