Argued and submitted September 27, 2001; resubmitted en banc August 7, reversed and remanded for new trial November 20, 2002

STATE OF OREGON,
*Respondent,*

*v.*

JOSEPH ANDREW JURY,
*Appellant.*

93CR875; A83517

57 P3d 970

Eric R. Johansen, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, and Brewer, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals his convictions for possession of a controlled substance, delivery of a controlled substance, and frequenting a place where controlled substances are used. ORS 475.992; ORS 167.222. At trial, the court admitted evidence that the police had obtained through the use of a body wire that they had placed on an informant. The police did not obtain a court order authorizing them to use the body wire. Defendant contends that the trial court's admission of that evidence was error under *State v. Fleetwood*, 331 Or 511, 16 P3d 503 (2000), and *State v. Cleveland*, 331 Or 531, 16 P3d 514 (2000). Defendant did not object to the admission of the evidence on the ground that the police had failed to obtain a court order before using the body wire. The question on appeal, however, is whether the admission of the evidence constitutes an error apparent on the face of the record and whether this court should review it pursuant to ORAP 5.45. We agree with defendant that the body-wire evidence was erroneously admitted, that the error is apparent on the face of the record, and that it is appropriate for us to exercise our discretion to correct it. We therefore reverse defendant's convictions and remand.

Shortly before defendant's trial in February 1994, we held that there was no statutory or constitutional impediment to the police using a body wire to overhear and record conversations without first obtaining a court order authorizing such use, so long as the police had probable cause to believe that the conversations would involve illegal drug transactions. *State v. Bass*, 126 Or App 303, 868 P2d 761 (1994), *vac'd*, 331 Or 693, 21 P3d 1086 (2001), *rev'd and rem'd*, 175 Or App 283, 27 P3d 165 (2001). *Bass* was the first case to address the constitutional issues, but we relied on two of our previous decisions so far as the statutory issue was concerned: *State v. Casteel*, 122 Or App 218, 857 P2d 204 (1993), and *State v. Evans*, 113 Or App 210, 832 P2d 460 (1992). In the present case, defendant did not make statutory or constitutional claims concerning the propriety of the body wire, such as were at issue in *Bass, Casteel*, or *Evans*. Rather, he argued only that the evidence should be excluded as overly prejudicial.

In his opening brief on appeal, defendant asserted for the first time that *Bass* and *Evans* had been wrongly decided. Shortly before defendant's opening brief was filed, the Oregon Supreme Court allowed review in *Fleetwood* and *Cleveland,* both of which involved the same issue as *Bass*. We allowed the state's motion to hold the present appeal in abeyance until the Supreme Court decided *Fleetwood* and *Cleveland*. Ultimately, the Supreme Court held that ORS 133.724 required the police to obtain court orders before using body wires to intercept communications. *Fleetwood,* 331 Or at 525-30; *Cleveland,* 331 Or at 534-35. After those decisions, the state filed its respondent's brief in the present case, arguing that defendant failed to preserve the claimed error for appellate review and that the error was not apparent on the face of the record. The state acknowledges that, if we do consider defendant's assignment of error, the trial court's admission of the body-wire evidence was erroneous.

For error to be considered apparent on the face of the record for purposes of ORAP 5.45, it must satisfy three criteria: (1) it must be legal error; (2) it must be "apparent," such that "the legal point is obvious, not reasonably in dispute"; and (3) it must appear on the face of the record, such that we "need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown,* 310 Or 347, 355, 800 P2d 259 (1990). If the asserted error satisfies those criteria, we then must exercise our discretion in deciding whether to correct the error. *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 382, 823 P2d 956 (1991).

In the present case, the asserted error is a legal error and does not require us to go outside of the record or choose between competing inferences; the only question is whether the error is sufficiently "apparent." More specifically, the question is whether we measure the "apparentness" of the error from the present time, and in light of the *Fleetwood* and *Cleveland* cases, or whether this question should be evaluated from the perspective of the trial court that, in the present case, ruled on the issue presented in accordance with the only case law that then existed on the subject. In sum, in this case we have an error that is "apparent" to us after the decisions in *Fleetwood* and *Cleveland,* but could not have been

"apparent" to the trial court when it ruled on the issue because the only existing case law at that time reached the opposite conclusion from *Fleetwood* and *Cleveland*.

Thus, we must determine whether the temporal baseline for "error apparent on the face of the record" is the time the trial court made the disputed ruling or the time the appellate court decides the appeal. No reported Oregon decision has explicitly addressed that question. We acknowledge that determining the "apparentness" of error by reference to the law existing at the time of the appeal can lead to ostensibly incongruous results: A trial court can be reversed for "plain error," when its ruling comported with—or even was compelled by—the law existing at the time the court ruled. Nevertheless, for the following reasons, we conclude that "error apparent" must be determined by reference to the law as of the time the appeal is decided.

■    Error apparent on the face of the record is merely a subspecies of error generally. Error, in general, must be determined by the law existing at the time the appeal is decided, and not as of the time of trial.[1] Consequently, the same must be true of error apparent on the face of the record.

Two common scenarios highlight the operative principle: In Case #1, a party raises an objection to the admission of evidence; under then-existing case law, that objection is not well-founded—and, indeed, controlling case law is to the contrary—and the trial court overrules the objection. The objecting party loses at trial and, on appeal, assigns error to the trial court's admission of the evidence. Between the time of trial and the time we determine the appeal, the Supreme Court overrules the previously controlling precedent with the direction that the ruling is not merely prospective. In that circumstance, we would hold that the trial court erred in admitting the evidence. That would be so regardless of whether the trial court's ruling was "correct" at the time that it was made.

---

[1] There are, of course, some notable exceptions to this general rule. For example, application of laws in effect at the time of an appeal but not in effect when a criminal defendant committed a crime may run afoul of *ex post facto* constitutional provisions. Also, the legislature may choose to specify the effective dates of particular laws and whether they apply to actions pending in trial courts or appellate courts.

The "benchmark" for error is the law existing as of the time the appeal is decided. *See, e.g., State v. McCain,* 175 Or App 274, 28 P2d 641 (2001) (a defendant who preserved issue in trial court obtained reversal on appeal based on the newly announced rule of law from *Fleetwood* although trial court's ruling was consistent with case law that predated *Fleetwood*).

Case #2 presents the obverse situation: A party objects to the admission of evidence—and, despite the fact that controlling case law squarely supports the objection, the trial court overrules the objection. Again, the objecting party loses at trial and appeals, assigning error to the trial court's evidentiary ruling. Again, while the appeal is pending, the Supreme Court overrules the preexisting precedent, giving that ruling retroactive application. In that circumstance, we would reject the claim of error, notwithstanding that the trial court did not adhere to controlling law at the time that it ruled. Again, the benchmark for determining error is the law existing as of the time the appeal is decided.

Nothing in the text of ORAP 5.45 or in the historical development of the "plain error" doctrine underlying that rule alters that general principle. *See, e.g., Ailes,* 312 Or at 381-83; *Brown,* 310 Or at 355. The operative language of the rule and its direct antecedents "error," "apparent," and "on the face of the record"—is not temporally restricted to the time of trial.

Moreover, we have consistently, albeit implicitly, defined "plain error" by reference to the law existing at the time the appeal is decided. *See, e.g., State v. Crain,* 177 Or App 627, 637-38, 33 P3d 1050 (2001), *rev den,* 334 Or 76 (2002); *State v. Daugaard,* 142 Or App 278, 284, 921 P2d 975 (1996), *rev den,* 334 Or 75 (2002). Indeed, in *State v. Farr,* 8 Or App 78, 492 P2d 305 (1971), *rev den* (1972), *cert den,* 406 US 973 (1972), we addressed and granted relief on a claim of error in circumstances closely analogous to those presented here:

> "The prosecutor makes the point that no objection was made in the trial court to the multiple charge in the indictment, hence, we should not consider this assignment of error * * *. *State v. Woolard*[, 259 Or 232, 484 P2d 314, 485

P2d 1194 (1971)], *was decided after the trial of the case at bar. We can thus see a reason for no objection having been made.* The error substantially affects defendant's status by placing one felony conviction against him which should not exist. *Therefore, we are invoking Rule 5.40 under which the court reserves the right to take notice of an error apparent on the face of the record, regardless of whether proper objection was made in the trial court."*

8 Or App at 82 n 1 (emphasis added).

Conversely, no reported Oregon decision has suggested, much less ruled, that "error" for purposes of "error apparent on the face of the record" must be determined by reference to the law existing as of the time of trial.

Finally, we fully appreciate that defining "error apparent" by reference to the law existing as of the time of the appeal *could* subvert important principles of preservation of error and comity with trial courts. That is, ingenious appellate counsel (and even judges) *could* use "plain error" as a device for reversing trial courts on grounds that were never raised at trial—but could have, and should have, been raised.

The answer to such manipulation lies in *Ailes*. *Ailes* mandates a two-step process. First, we must determine that a claim of error satisfies the requirements for "plain error." Second, even if we so determine, we can address unpreserved "plain error" only if we explicitly find that certain criteria justify our exercise of discretion in that regard:

> "Even if the error meets [the *Brown*] test, however, the appellate court must exercise its discretion to consider or not to consider the error, and if the court chooses to consider the error, the court must articulate its reasons for doing so. This is not a requirement of mere form. A court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution. Such an action is contrary to the strong policies requiring preservation and raising of error."

*Ailes*, 312 Or at 382 (citation omitted). Thus, *Ailes*'s second step acts as a "baffle" on free-wheeling consideration of "plain error." The criteria we must apply ensure that review of plain error will be the exception, and not the rule. Those criteria

ensure that the appellate courts will bypass principles of preservation only in extraordinary circumstances.[2]

In sum, determining "plain error" by reference to the law existing as of the time of the appellate decision both (1) comports with general appellate principles and (2) affords the appellate courts greater flexibility to remedy egregious cases. Conversely, *Ailes*'s prudential criteria constrain our discretion to consider "plain error" so as to ensure fidelity to principles of preservation and comity except in exceptional cases.

■ We return to this case. Here, the error was apparent on the face of the record. The underlying facts are undisputed and, in the light of *Cleveland*, 331 Or at 525-30, and *Fleetwood*, 331 Or at 534-35, the lawfulness of the use of the body wire in this case is no longer "reasonably in dispute." *Brown*, 310 Or at 347.

■ We turn, then, to whether we should exercise our discretion under *Ailes* to remedy that error. In making that determination, we generally consider the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice. *See, e.g., State v. Wilkins*, 175 Or App 569, 587, 29 P3d 1144, *rev den*, 333 Or 74 (2001). Here, we elect to exercise our discretion under *Ailes* for two related reasons.

First, defendant's failure to raise and preserve his present objection at trial was, at least partly, justifiable. At the time of defendant's trial, we had decided *Bass*, and the Supreme Court had not yet accepted review in *Cleveland* and *Fleetwood*. Given those circumstances, defense counsel could have reasonably forgone making the argument now

---

[2] In *Ailes*, the court identified a nonexclusive list of criteria that guide the appellate courts' discretion to consider "plain error":

"In future applications of this rule, in deciding whether to exercise its discretion to consider an error of law apparent on the face of the record, among the factors that a court may consider are: the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way * * *."

312 Or at 382 n 6.

advanced on appeal and, even if defense counsel had raised the present objection at trial, the trial court would properly have rejected that challenge under *Bass*. In a closely related, and fundamental, sense, because the outcome at trial would not have been altered even with preservation, our allowance of relief in this case will not subvert the comity considerations that underlie the preservation requirement. *See, e.g., J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den*, 321 Or 47 (1995) (describing rationales for preservation requirement).

Second, correction serves the ends of justice in that the use of the body-wire evidence was central to the prosecution—and, ultimately, to defendant's convictions of two felonies and one misdemeanor. We note, moreover, that we have reversed the convictions of several other similarly situated defendants on identical grounds.[3] Although the body-wire issue was preserved in those cases, unlike here, we decline to treat defendant differently from those defendants because, as described above, preservation would not have made a difference in this case.

■     Finally, we conclude that the error in admitting the body-wire evidence did not constitute harmless error. OEC 103(1).

We thus conclude that, under *Fleetwood* and *Cleveland*, the erroneous admission of the body-wire evidence requires reversal of defendant's convictions and remand for a new trial.

Reversed and remanded for new trial.

---

[3] *E.g., State v. Aldrich*, 175 Or App 643, 29 P3d 1170 (2001); *State v. Brenner*, 175 Or App 286, 27 P3d 170 (2001); *Bass*, 175 Or App at 283; *State v. Reier*, 175 Or App 282, 27 P3d 170 (2001).