Argued and submitted August 2, 2006, reversed and remanded on Counts 1, 2, 3; otherwise affirmed April 18, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ALONZO DWIGHT GRAVES,
aka Anthony Leroy Robinson,
*Defendant-Appellant.*

Multnomah County Circuit Court
030230786; A122061

157 P3d 295

Andrew S. Chilton argued the cause for appellant. With him on the brief was Chilton, Ebbett & Rohr, LLC.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge,* and Huckleberry, Judge pro tempore.

HUCKLEBERRY, J. pro tempore.

---

* Wollheim, J., *vice* Linder, J.

## HUCKLEBERRY, J. pro tempore

Defendant appeals a judgment of conviction for felony assault in the fourth degree, ORS 163.160, and three counts of menacing, ORS 163.190; he assigns error only to his convictions for felony assault in the fourth degree and two counts of menacing. He contends that the trial court erred in allowing the investigating police officer to testify to statements made by two victims who did not testify at his trial. Defendant claims that the admission of those statements violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution, as interpreted in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). We agree with defendant that the trial court erred in admitting some of the statements and that the errors were not harmless. Accordingly, we reverse his convictions and remand.

Defendant's convictions arise from a domestic disturbance that occurred in the early morning hours of February 15, 2003. On that morning, D, a 14-year-old child, awoke to the sound of his mother screaming and called 9-1-1. The 9-1-1 call was short; D indicated that his mother had been kicked in the face and then the phone line disconnected. Police were immediately dispatched to the location of the domestic disturbance.

After arriving at the house, the officers knocked on the door and rang the doorbell. Although the officers could see people moving inside the home, no one answered the door. The officers persisted because they were concerned for the safety of the people inside the home. Eventually D stuck his head out of an upstairs window and shouted down to the officers, "[s]he won't come to the door." D also told the officers that defendant had kicked his mother, Robinson, in the face while she was sleeping and that defendant had since left the home. A few seconds later, Robinson appeared in the window behind D; she told the officers "[h]e is gone and you need to leave." The officers pleaded with Robinson to open the front door, and, although she was reluctant, she eventually went downstairs and opened the door.

Immediately after Robinson opened the door, the officers noticed that her eye was swollen and there was a scratch under her eye. Robinson told the officers that defendant was not inside the home, but the officers, who were not convinced by her statement, asked Robinson if they could search her home. Robinson agreed and the search confirmed that defendant was not inside. The officers then separated Robinson and D to interview them; one officer remained upstairs to interview D, while the other went downstairs with Robinson. The officer asked D to come out of his bedroom and D emerged from his room holding an eight-inch butcher knife; D explained to the officer that the knife was for protection, because defendant told D that he would come back to kill them. At trial, the officer testified that D appeared frightened, had tears in his eyes, and his body was shaking when he explained the incident to the officer. D told the officer that, when he heard his mother screaming, he went into the hallway and saw defendant, his mother's boyfriend, slamming her up against the wall. D also stated that during the incident his mother was screaming that defendant had kicked her in the face.

The officer then went downstairs to interview Robinson. Robinson was very uncooperative, but eventually told the officer that defendant had kicked her in the face while she was sleeping.

Defendant was indicted for felony assault in the fourth degree of Robinson, and three counts of menacing. The state made numerous attempts to subpoena Robinson and D to testify at defendant's trial, but neither witness appeared. At a pretrial hearing, defendant objected to the officer's testimony recounting Robinson's and D's statements on the ground that the admission of their statements, without the declarants testifying, violated his confrontation rights under both the Oregon and United States constitutions. The court permitted the police officer to testify to Robinson's and D's statements because it found that both witnesses were unavailable and that their statements had adequate indicia of reliability.[1] The jury found defendant guilty on all four

---

[1] The trial court applied the analysis of *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980). At the time of defendant's trial, the *Ohio v. Roberts*

counts. He challenges only his convictions for felony assault in the fourth degree and two counts of menacing, with respect to Robinson and D.

On appeal, defendant argues that the trial court erred in allowing the officer to testify to Robinson's and D's statements. He asserts that, pursuant to *Crawford*, admission of the statements violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution because Robinson and D did not testify at his trial and defendant did not have a prior opportunity to cross-examine them regarding their statements.[2]

■ The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" In *Crawford*, the Supreme Court announced a new method of analyzing Confrontation Clause issues. The court examined the text and historical background of the Sixth Amendment and concluded that it is primarily aimed at "testimonial" out-of-court statements that are admitted against a criminal defendant. 541 US at 53-54. Under *Crawford*, a testimonial hearsay statement is admissible only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Id.* at 68. Nontestimonial statements do not implicate the Sixth Amendment Confrontation Clause. *Id.*

Although *Crawford* did not define the boundaries of "testimonial" statements, the Supreme Court's recent decision in *Davis v. Washington*, ___ US ___ , 126 S Ct 2266, 165 L Ed 2d 224 (2006), sheds light on that issue. *See State v. Miles*, 208 Or App 252, 256, 145 P3d 242 (2006); *see also State*

---

test was the appropriate Confrontation Clause analysis under both the Oregon and United States constitutions. That test permitted the trial court to admit statements from nontestifying witnesses consistent with a defendant's confrontation rights if the declarant was unavailable and the statement had "adequate 'indicia of reliability.'" *Roberts*, 448 US at 66. On appeal, however, we apply the *Crawford* analysis. *See State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (appellate courts apply law in effect at time of appeal).

[2] In the trial court, defendant objected to the admission of Robinson's and D's statements on both state and federal constitutional grounds. However, on appeal, defendant solely relies on the Confrontation Clause of the Sixth Amendment to the United States Constitution as grounds that the trial court erred in admitting the statements.

*v. Camarena,* 208 Or App 575, 145 P3d 267 (2006), *rev allowed,* 342 Or 523 (2007) (applying *Davis* in the context of a 9-1-1 call). In *Davis,* the Court, in a single opinion, decided two cases, *Davis v. Washington* and *Hammon v. Indiana.* Both cases presented the same issue: whether statements made in the course of domestic violence incidents constituted "testimonial" statements under *Crawford.*

In *Davis,* the victim of a domestic dispute gave the statement to a 9-1-1 operator during the assault; the statement described the attack and the identity of the perpetrator. *Id.* at ____ , 126 S Ct at 2270-71. In *Hammon,* the victim gave a statement describing the assault to a police officer at the scene of the incident. The victim in *Hammon* made her statement after the police separated her from the defendant in the course of investigating the incident. *Id.* at ____ , 126 S Ct at 2272. In both *Davis* and *Hammon,* the declarants did not appear, but their statements were admitted at trial. Applying *Crawford* to *Davis* and *Hammon,* the Court was faced with the task of classifying the statements as either testimonial or nontestimonial. It announced the following principle to aid in making that classification:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

*Id.* at ____ , 126 S Ct at 2273-74. The Court also explained that the classification of statements as testimonial or nontestimonial can evolve; it stated, "[t]his is not to say that a conversation which begins as an interrogation to determine the need for emergency assistance cannot * * * evolve into testimonial statements once that purpose has been achieved." *Id.* at ____ , 126 S Ct at 2277 (internal quotation marks and citation omitted).

Applying those principles to the facts of *Davis* and *Hammon,* the Court concluded that the statement made to

the 9-1-1 operator in *Davis* was nontestimonial, because that statement described events *"as they were actually happening"* and while the declarant was "facing an ongoing emergency." *Id.* at ____ , 126 S Ct at 2276 (emphasis in original). The Court concluded that the statement made in *Hammon* was testimonial, because the declarant made the statement after the incident was over and the statement recounted how the "criminal past events began and progressed." *Id.* at ____ , 126 S Ct at 2278.

Our first step in applying those principles to this case is to determine whether Robinson's and D's statements were testimonial and thus subject to Sixth Amendment protection under *Crawford*. To aid in making that determination, we separate the relevant statements into three temporal categories: (1) D's statement from the upstairs window, (2) D's subsequent statement to police after the officers searched the home, and (3) Robinson's subsequent statement to police after the officers searched the home.[3]

■ D made the first statement from an upstairs window when the officers arrived at the scene. In regard to the first statement, the officer testified:

> "[D] told me that [defendant] had left on foot. He didn't give me any direction or anything like that, but he left it that he had left on foot. He also told me, 'He kicked her in the face when she was sleeping.' "

That first statement is nontestimonial under *Davis*. As in *Davis*, the statement was made under circumstances that objectively indicate that the primary purpose of the officer's question was to enable the officer to respond to a *potential* ongoing emergency, because the officers were responding to a domestic disturbance where the 9-1-1 call had been disconnected and the people inside the home would not answer the door. Under those circumstances, it was reasonable for the officer to be concerned for the safety of the occupants of the home, even if the victims indicated that defendant was

---

[3] The statements in the 9-1-1 call are not at issue on appeal. At a pretrial hearing, the trial court ruled that the 9-1-1 tape was not admissible; it stated, "based on discovery issues, the marginal quality of the tape, and, frankly, with the statements that the parties made to the officers when they got there, I'm simply going to exclude [the 9-1-1 tape]."

not inside the home. Because D's first statement is nontestimonial, the trial court's admission of that statement did not violate defendant's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

■ Next, we turn to the second statement. The second statement was made by D, after the officers searched the home and "did not find" defendant. At that point, the officers had separated Robinson and D to take their statements. The officer explained that "when we interview people at the scene of any crime to conduct an investigation, we separate our witnesses so we can take independent statements." With regard to the second statement, the officer testified:

> "[D] told me that early morning on the 15th, he woke up to his mother screaming. He went into the hallway and saw [defendant], his mother's boyfriend, grabbing her by the shoulders and slamming her up against the wall * * * in the upstairs bedroom * * *. She was screaming and crying and [D] noticed that her eye was bleeding. She was screaming that [defendant] had 'kicked her in the face.' And [D] was scared and called 9-1-1. He also watched as [defendant] started screaming at him and his mother, 'I'm coming back and I'll kill you.' That was when [D] ran downstairs to the kitchen and got the butcher knife. [D] told me that he was very scared of [defendant] and that [defendant] was drunk that night and that he doesn't want [defendant] to hit his mother anymore."

The state argues that the second statement is nontestimonial, because D made it in the context of an ongoing emergency. Specifically, the state contends that when D made the second statement he was terrified that defendant would return and kill him and thus the emergency was ongoing. The officer's testimony supports that contention, because D had a knife at the time he made the statement and appeared frightened. Defendant argues that the statement is testimonial, because the emergency was over when D made the statement. Defendant contends that D made the statement after the police searched the home and had confirmed that defendant was not present, and after they had determined that none of the occupants was seriously injured. We agree with defendant that the second statement is testimonial. The objective circumstances surrounding the second

statement indicate that there was no longer an ongoing emergency and the primary purpose of that statement was to elicit information from D regarding an incident that occurred in the past for use in a future criminal prosecution. *See Davis*, ____ US at ____, 126 S Ct at 2278.

The primary purpose of the officer questioning D was to establish a past event. At the time of the statement, the officers were done searching the home and had confirmed that defendant was not inside the house; thus, he was not an imminent threat to Robinson or D. The officers then proceeded to separate Robinson and D to take "independent statements" from them. Based on those facts, the second statement is testimonial. Because D was unavailable to testify at trial, and because defendant had no prior opportunity to cross-examine him, admission of the statement violated defendant's Sixth Amendment right to confrontation.

■ Lastly, we turn to the third statement. Robinson made the third statement after the officers were certain that defendant was not inside the home, and after Robinson was separated from D so the officers could take her "independent statement." At trial, the officer testified to the third statement as follows:

> "Ms. Robinson told me that she was sleeping in her bedroom on the night of the 15th when she felt something slam up against her face. She told me, 'He kicked me in the face while I was sleeping.' She told me that he was angry about something that she said to her cousin. * * * I asked Ms. Robinson if she wanted to file charges against [defendant], and she told me, 'No, I ain't trying to get anyone put in jail. This ain't nothing.' "

The circumstances surrounding the third statement are similar to those surrounding the second statement; viewed objectively, those circumstances indicate that the third statement by Robinson is testimonial for the reasons we explained above. And again, because defendant had no prior opportunity to cross-examine Robinson, admission of the statements violated defendant's Sixth Amendment confrontation rights.

■ A question remains as to whether the constitutional error was harmless. The federal harmless error analysis

applies to violations of the Sixth Amendment Confrontation Clause. *State v. Cook*, 340 Or 530, 544, 135 P3d 260 (2006). Under the federal harmless error test, an error is considered harmless if "the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Id.* (citing *Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986)). That inquiry depends on a number of factors including the importance of the statement to the state's case, whether the statement was cumulative, the presence or absence of evidence corroborating the statement, and the strength of the state's case. *Cook*, 340 Or at 544.

Applying those factors to this case, we conclude that the trial court's error in allowing the officer to testify to the second and third statements was not harmless. We reach that conclusion primarily because the second and third statements were crucial to the state's case. In fact, the state offered only one witness, the officer who interviewed Robinson and D. The crux of the state's case was Robinson's and D's statements to the testifying officer; those statements were the only evidence describing the incident. In addition, those statements are not cumulative of D's first statement to the officer from the upstairs window. The second and third statements contained more detail about the incident than D's first general statement that defendant "kicked her in the face when she was sleeping." For those reasons, we conclude that the trial court's error in admitting the statements in violation of defendant's Sixth Amendment Confrontation Clause rights was not harmless.

Reversed and remanded on Counts 1, 2, 3; otherwise affirmed.