JAMES, J.
*34 Defendant appeals from a judgment revoking his probation and imposing a period of 36 months' incarceration as a revocation sanction. The parties agree that under OAR 213-010-0002(2), when a sentencing court revokes a departure term of probation, the maximum revocation sanction is the defendant's presumptive maximum. Defendant was categorized in the sentencing guidelines grid block as a 6F for Count 1, and a 6C for Count 4. As to Count 1 (6F), the presumptive sentence was probation and the maximum sanction upon revocation from a presumptive probationary sentence is six months. OAR 213-010-0002(1). As to Count 4 (6C), the maximum presumptive sentence is 18 months, and accordingly the maximum revocation sanction is 18 months. On appeal, defendant acknowledges that he failed to object to the 36-month revocation sanction, but asks us to exercise discretion to reach the issue as plain error. The state concedes the error, but argues that circumstances present in this case weigh against the exercise of discretion to correct the error. We exercise our discretion to correct the error, and, accordingly, reverse and remand.
In April 2014, defendant pleaded guilty to two counts of third-degree assault and stipulated to several aggravating sentencing factors. The state asked the court to impose an upward dispositional departure sentence of 18 months' incarceration on Count 1, and a consecutive upward durational departure sentence of 27 months' incarceration on Count 4, for a total aggregate sentence of 45 months' incarceration. Defendant asked the sentencing court to "give[ ] him th[e] chance," or "carrot," of a probation sentence only, with the "stick" of a "prison sentence" "hanging over his head."
The court determined that aggravating factors justified consecutive upward departure sentences of 18 months' incarceration on Count 1 and 36 months' incarceration on *489 Count 4, for a total aggregate sentence of 54 months' incarceration. The court further determined, however, that defendant was amenable to treatment, and it imposed a probation sentence. However, the court indicated that defendant would serve "18 months [with Department of Corrections] *35 DOC if probation is revoked." On Count 4, the court specified "[d]efendant to serve 36 months DOC if probation is revoked, consecutive to 18 months on Count 1, this case." Defendant did not appeal from that judgment.
In January 2015, the state alleged a probation violation and requested that probation be revoked, and the 54-month incarcerative term be imposed. Defendant's probation officer recommended a 20-day sanction. At the hearing defendant referred to the "enormous" prison sentence "hanging over his head." The trial court revoked defendant's probation on Count 1 and imposed a revocation sanction of 18 months of incarceration. It continued defendant's probation on Count 4. For the purposes of this appeal, the parties agree that the 18-month revocation sanction was unlawful under OAR 213-010-0002(1). Nevertheless, defendant did not object at the time.
In December 2016 the state moved for a show-cause hearing why defendant's probation for Count 4 should not be revoked, alleging that defendant violated the conditions of probation by failing to submit to a urine test and failing to report as directed. Following defendant's stipulation to the probation violation, the trial court revoked probation for Count 4 and imposed 36 months of prison with two years of post-prison supervision (PPS). Defendant did not object at the time, but he now appeals the ensuing judgment.
This court reviews the scope of a trial court's authority to impose a probation revocation sanction for legal error. State v. Denson , 280 Or. App. 225, 231, 380 P.3d 1170 (2016). In approaching issues raised as plain error, this court applies the two-step process articulated in Ailes v. Portland Meadows, Inc. , 312 Or. 376, 382, 823 P.2d 956 (1991). First, we must determine that a claim of error satisfies the requirements for "plain error." That is, it must be legal error-apparent, obvious, and not reasonably in dispute-that appears on the face of the record, and the facts constituting the error must be irrefutable. Id . at 381-82, 823 P.2d 956.
Second, even when the first step of Ailes is met, we are not obligated to correct an error. And when we do so, we must articulate our reasons for doing so:
*36 "[T]he appellate court must exercise its discretion to consider or not to consider the error, and if the court chooses to consider the error, the court must articulate its reasons for doing so. This is not a requirement of mere form. A court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution. Such an action is contrary to the strong policies requiring preservation and raising of error."
Id. at 382, 823 P.2d 956 (citation omitted).
Ailes identified a nonexclusive list of criteria that guide the appellate courts' discretion to consider "plain error":
"In future applications of this rule, in deciding whether to exercise its discretion to consider an error of law apparent on the face of the record, among the factors that a court may consider are: the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way * * *."
Ailes , 312 Or. at 382 n. 6, 823 P.2d 956. As we have noted, Ailes 's second step acts as a "baffle" on free-wheeling consideration of "plain error." State v. Jury , 185 Or. App. 132, 138-39, 57 P.3d 970 (2002), rev. den. , 335 Or. 504, 72 P.3d 636 (2003). The criteria we must apply ensures that review of plain error will be the exception, and not the rule. Id. at 138-39, 57 P.3d 970.
Applying that framework to this case, we agree with the parties that the first step of Ailes is met in this case. The error here is legal, obvious, and apparent on the face of the record. There is no dispute that a court's authority to impose a criminal sentence derives *490 from the legislature, and that sentencing-its mechanisms, authorities, and restrictions-are statutory. A court's authority to sentence a defendant on a probation revocation is therefore limited by what the legislature permits.
ORS 137.545(5)(b) provides that if a defendant fails to comply with the conditions of probation, a court may revoke probation and impose sanctions provided by the Oregon Criminal Justice Commission. The Oregon Criminal Justice Commission promulgated rules and sentencing guidelines in *37 chapter 213 of the Oregon Administrative Rules. Pertinent in this case, OAR 213-010-0002(2) applies to probation revocations and provides, in part:
"For those offenders whose probationary sentence was * * * a departure from a presumptive prison sentence * * * the sentence upon revocation shall be a prison term up to the maximum presumptive prison term which could have been imposed initially * * *."
Thus, "once a probationary sentence is executed, ' OAR 213-010-0002 limits the revocation sanctions to those that flow from the gridblock used at the time of sentencing.' " State v. Bolf , 217 Or. App. 606, 609, 176 P.3d 1287 (2008) (quoting State v. Hoffmeister , 164 Or. App. 192, 196, 990 P.2d 910 (1999) ). Thus, despite the fact that the trial court desired to keep the "hammer" of a sizeable revocation sanction over defendant, the court lacked that authority .
We turn then to whether we should exercise our discretion to correct the error. In urging us not to, the state primarily argues that defendant's failure to object should be viewed as a tactical decision. In general, an error that "was the product of a tactical or strategic choice" on the part of a defendant "decisively militates against an exercise of Ailes discretion." State ex rel Juv. Dept. v. S. P. , 218 Or. App. 131, 142, 178 P.3d 318 (2008), aff'd , 346 Or. 592, 215 P.3d 847 (2009). In this case, we would find that argument more persuasive if this were an appeal from the original judgment, or the revocation on Count 1. In both of those instances one could conceive of a tactical reason for defendant to acquiesce. At the time of original sentencing defendant risked the trial court changing its mind and not departing to probation. And at the first revocation, defendant risked the court revoking on both counts. But by the time of the last and final count of probation remaining, we struggle to find a plausible tactical reason for defendant not to object to an admittedly unlawful sentence. Ultimately, we are unpersuaded that the errors that occurred over the course of all of defendant's sentencings were tactical decisions, as opposed to simple mistakes.
Next, this is a criminal case, where the error affects a liberty interest. And in this case, the error is consequential. Defendant already served a revocation sentence that *38 the parties agree was six months longer than permissible on Count 1. Now, defendant will serve another 18 months beyond the lawful limit on Count 4. The gravity of the error to defendant is significant.
Finally, as we have repeatedly noted, the state has no valid interest in having defendant serve an unlawful sentence. See, e.g. , State v. Hall , 256 Or. App. 518, 519, 301 P.3d 438, rev. den. , 354 Or. 148, 311 P.3d 525 (2013) ; State v. Gutierrez , 243 Or. App. 285, 288, 259 P.3d 951 (2011) ; State v. Wierson , 216 Or. App. 318, 319, 172 P.3d 281 (2007). Our observations on that point extend beyond "the state" as party in this matter, but to the state broadly-as the collective citizenry of Oregon. As discussed, sentencing is set by the legislature, and part of the legislative decision-making in that arena is the allocation of finite state resources. Resource constraints require the legislature to prioritize certain criminal justice matters as a greater priority use of those finite resources than others. The legislature has made that policy choice in deciding that monies to be spent on probation revocation sanctions are limited to a maximum presumptive grid block sentence-a value also set by the legislature. When a sentence exceeds that which a statute provides for, it necessarily interferes with the legislative allocation of scarce state resources. While resources are not per se dispositive on our consideration of plain error sentencing matters, we approach the issue mindful of those concerns.
*491 In conclusion, we find that the ends of justice militate in favor of the exercise of discretion in this case.
Reversed and remanded for resentencing; otherwise affirmed.