Argued and submitted September 11, affirmed October 16, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW TAYLOR SMITH,
*Defendant-Appellant.*

Deschutes County Circuit Court
16CR66235; A166334

452 P3d 492

Defendant appeals a judgment of conviction for luring a minor, ORS 167.057, first-degree online sexual corruption of a child, ORS 163.433, and attempted second-degree sexual abuse, ORS 163.425(a), for arranging by text message to meet for oral sex with a person he believed to be a 15-year-old girl. On appeal, he argues that the trial court erred by not *sua sponte* striking a detective's testimony that defendant engaged in "grooming" during the text exchanges. In defendant's view, that testimony was plainly scientific evidence that lacked the necessary foundation for its scientific validity in light of the Supreme Court's decision in *State v. Henley*, 363 Or 284, 301, 422 P3d 217 (2018). *Held*: It is not beyond reasonable dispute under post-*Henley* case law that the detective's testimony was scientific evidence that required additional foundation.

Affirmed.

Stephen P. Forte, Judge.

Kali Montague, Deputy Public Defender, argued the cause for appellant. Also on the opening and reply briefs and a supplemental brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services. Matthew T. Smith filed a supplemental brief *pro se.*

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and Powers, Judge.

LAGESEN, P. J.

Affirmed.

**LAGESEN, P. J.**

Defendant, who was 24, saw a girl at a restaurant and left her a note that invited a "hookup" and included his phone number. The girl's mother gave the note to police. They then impersonated the girl in text messages to defendant. Through those text messages, the ostensible girl told defendant that she was 15 and arranged for him to meet her for oral sex. Defendant arrived at the agreed location and was arrested.

For that conduct, defendant was charged with and later convicted of luring a minor, ORS 167.057, first-degree online sexual corruption of a child, ORS 163.433, and attempted second-degree sexual abuse, ORS 163.425(a). On appeal, he argues that the trial court plainly erred by not *sua sponte* striking a detective's testimony that defendant engaged in "grooming" during the text exchanges. In defendant's view, that testimony was plainly scientific evidence that lacked the necessary foundation for its scientific validity in light of the Supreme Court's decision in *State v. Henley*, 363 Or 284, 301, 422 P3d 217 (2018). As we explain, we reject that plain-error argument, because it is not beyond reasonable dispute under our post-*Henley* cases that the grooming testimony in this case was scientific evidence that required additional foundation. We therefore affirm.

At trial, the state offered the following testimony from a detective about how defendant's actions constituted "grooming" behavior:

"It appeared to be that there was—there was obvious grooming, you know, that started going on here. You know when you look at the typical grooming of children, whether it's online, in person or whatnot, we—we look at—it starts with, you know, some sort of acceptance, some sort of, you know, trust between the two. It was clear to me that this—whoever was on the other line, or other end of this phone knew that this was a—a 15 year old. And it also went to, you know, the note being left [at the restaurant]. So there's already a—the set—the stage was set for a hookup. And then there was also some talk about keeping it a secret, you know, we don't want mom to know, how do I know it's not mom. So based on—on my training and experience as a detective, you know, is this going to be an investigation

into preventing a crime or is this going to end up being a response to a—a rape that may have occurred."

Defendant did not object to that testimony but now argues that, in light of *Henley*, decided after the trial in this case, the detective's testimony constituted scientific evidence for which the state did not lay an adequate foundation. *See State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (explaining that error is determined based on the law that exists at the time of appeal rather than the time of the trial court's ruling). In *Henley*, the trial court had allowed a forensic interviewer for Children at Risk Evaluation Services (CARES) to define grooming behavior and to describe the behaviors by the defendant that concerned her, but the state disclaimed a scientific grounding for that testimony. The Supreme Court held that, despite efforts to disclaim a scientific connection, the testimony about grooming, "in the context of her testimony overall, was 'scientific' evidence, because *** the evidence implied that it was grounded in science and the jury likely would have viewed the evidence that way." 363 Or at 301. The court explained that, "[i]n light of her credentials and training, which the prosecution highlighted, [her] expert testimony implied that the training she had received on grooming, and the information about grooming from that training that she conveyed to the jury, was accepted and grounded in behavioral science." *Id.* at 303. Moreover, "even though the prosecution did not highlight the scientific nature of [her] testimony or focus its examination on studies, research, and literature in the field that supported her testimony, *** lay jurors likely would have accorded the testimony the persuasive value of scientific principle" based on the circumstances of her testimony. *Id.*

We have since applied *Henley* in two cases that bear on whether the detective's testimony in this case was plainly scientific evidence that required a foundation showing its scientific validity: *State v. Plueard*, 296 Or App 580, 439 P3d 556, *adh'd to as modified on recons*, 297 Or App 592, 443 P3d 1195, and *State v. Evensen*, 298 Or App 294, 315, 447 P3d 23 (2019).

In *Plueard*, the trial court overruled a defendant's objection to testimony by a social worker, Petke, about her

training and experience and familiarity with the "phenom-enon" of grooming. Petke further testified that "'grooming is a gradual process of building trust with a child in—with the purpose of establishing such a level of trust to allow for an opportunity for sexual abuse.'" 296 Or App at 584. We reversed, holding that the reasoning in *Henley* was controlling. We reasoned that that was the case in signif-icant part because Petke's phrasing ("phenomenon") could evoke a scientific air, her education and experience related to CARES investigations—which immediately preceded the testimony about the "phenomenon"—would have confirmed its scientific nature, and she offered a definition of grooming that was not common knowledge. *Id.* at 587-88.

After *Plueard*, we decided *Evensen*. It involved tes-timony by a detective about her own experiences investigat-ing reports of child abuse and that younger children tend to be more susceptible to "suggestibility" about what happened than older children, that very few cases she had investigated involved a suspect who was a stranger to the child, and that suspects typically were people who were connected to the family and had a good relationship with them. *Evensen*, 298 Or App at 311-12. We held that the detective's testimony was not scientific evidence that required a foundation showing its scientific validity, because the detective did not suggest the existence of some "phenomenon" independent of the detective's own experience; the detective did not purport to explain, based on an outside authoritative source, that her interview technique was guided by principles of science; she did not give testimony from which a jury could have inferred that she had any specialized level of education-based exper-tise; and she did not draw any scientific or research-based connection between her testimony and the conduct of the victim or the defendant. *Id.* at 315-16. For those reasons, we concluded that "the overriding concerns that led to the holdings in *Henley* and *Plueard* are not present here." 298 Or App at 317.

In defendant's view, the detective's testimony in this case is more like the evidence deemed scientific in *Henley* and *Plueard*; in the state's view, it is more like the evidence in *Evensen*. As those competing arguments suggest, this case falls somewhere between those cases. On the one hand,

the detective's testimony used the phrase "obvious grooming" and "typical grooming of children," and described how it "starts," in a context that suggests some type of observable phenomenon. And he mentioned his "training and experience as a detective," which involved training and experience specific to child abuse investigations, shortly after referring to grooming, all of which arguably implicates the same concerns as the testimony in *Henley* and *Plueard*. On the other hand, the detective did not provide a definition of grooming, and did not even tie his understanding of grooming to his training and experience; rather, he connected his training and experience to his assessment of where the investigation might lead: "based on—on my training and experience as a detective, you know, is this going to be an investigation into preventing a crime or is this going to end up being a response to a—a rape that may have occurred." Arguably, the detective's testimony about "grooming" would have been understood by the jury as a product of his own observations and common knowledge rather than derived from scientific principles, making it more analogous to the testimony in *Evensen*.

Regardless of who has the better argument in that respect, in view of those competing arguments, the matter is not obvious or beyond reasonable dispute. Because that is the threshold for our review of an unpreserved claim of error, we must reject defendant's claim of error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (for an error to qualify as plain, it must be "'apparent, *i.e.*, the point must be obvious, not reasonably in dispute'" (quoting *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990))). We therefore affirm the judgment of the trial court.[1]

Affirmed.

---

[1] In a *pro se* supplemental brief, defendant argues that his conviction is unconstitutional because of compelling evidence of entrapment and improper vouching. We reject that argument without discussion. And, in a supplemental assignment of error, defendant asserts that the trial court plainly erred by instructing the jury that it could return a nonunanimous verdict. We likewise reject that supplemental assignment of error. *State v. Weltch*, 297 Or App 409, 410, 439 P3d 1047 (2019) (explaining that our case law forecloses the same unpreserved claim of error concerning jury unanimity).