Submitted December 11, 2012, reversed May 15, 2013

In the Matter of M. L. R.,
Alleged to be a Mentally Ill Person.
## STATE OF OREGON,
*Respondent,*

*v.*

## M. L. R.,
*Appellant.*

Deschutes County Circuit Court
11MH0006MS; A148456

303 P3d 954

Janie M. Burcart filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Christina M. Hutchins, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Upon finding that appellant was dangerous to herself as the result of a mental disorder, the trial court entered a judgment committing her to the Oregon Department of Human Services (DHS) for a period not to exceed 180 days. ORS 426.130(1)(b)(C); ORS 426.005(1)(e)(A). Appellant seeks reversal of the judgment, arguing, among other things, that the trial court violated ORS 426.100(1), which requires trial courts to provide allegedly mentally ill persons with certain information before civil commitment hearings. For the reasons explained below, we conclude that the trial court committed plain error and reverse.[1]

The relevant facts are procedural and undisputed. Appellant came before the trial court for a civil commitment hearing. Appellant and her appointed counsel were present at the hearing. At the beginning of the hearing, the trial court engaged in the following colloquy with appellant:

"THE COURT:  * * * [L]et me just tell you what this is about. And so you understand—first off, you understand that the nature of this proceeding, you do have the right to have an attorney represent you and if you want we can appoint one to represent you * * *.

"[APPELLANT]:  Yes.

"THE COURT:  And I assume you had the opportunity to talk with [your lawyer]?

"[APPELLANT]:  Yes.

"THE COURT:  * * * So that's the first thing, and so he's been appointed to represent you and help you in this process. Ma'am, understand that there's—at this point there's the allegation that you're suffering from a mental disease, do you understand that?

"[APPELLANT]:  Yes.

"THE COURT:  And the State is moving at this point because there is an allegation that you can't—you're a danger to yourself and others, do you understand that?

---

[1] Our resolution obviates the need to address appellant's other assignments of error.

"[APPELLANT]:  I understand that, but that's not the case.

"THE COURT:  Well, that's what this hearing is about, do you understand that?

"[APPELLANT]:  I understand that.

"THE COURT:  So the State is going to be calling—or the county will be calling witnesses to testify about that admission and there's already in the court file, the court folder, that you have you have the right to cross-examine—through your attorney, cross-examine those witnesses, ask them questions. You have a right to make a statement if you'd like, do you understand that?

"[APPELLANT]:  I understand that.

"THE COURT:  Understand that it's a hearing to me and then I'll make a determination if by clear and convincing evidence that you are suffering from—that you are unable—that you have a mental illness that prevents you from taking care or being a threat to yourself or others, do you understand?

"[APPELLANT]:  I understand.

"THE COURT:  If I determine that—well, based upon the hearing, if I determine that, then there's a choice of commitment to treatment in a hospital or there's a choice of conditional release. If I find that there is no threat to you or to others, then the choice will be (indiscernible) and then the case will be dismissed and that will be that, do you understand?

"[APPELLANT]:  I understand.

"THE COURT:  So it's my understanding that you want to have a hearing, correct? You are contesting that is just what you said to me, you want to argue against the fact you don't think you're a danger to yourself or others?

"[APPELLANT]:  No, I'm not.

"THE COURT:  Okay, so that's what the purpose of this hearing is for, do you understand that?

"[APPELLANT]:  I understand.

"THE COURT:  So again, any questions about that process?

"[APPELLANT]: No.

"THE COURT: Okay, so we're going to go ahead and begin. And I'm going to tell you that I have a copy of the report, I'm also appointing Ms. Stratton to help me in this process, do you understand that?

"[APPELLANT]: I understand.

"THE COURT: She's the person who's spoken with you, has had an opportunity to review reports, and she'll also have an opportunity to observe this hearing and then provide—at the end of the hearing I'll take her sworn statement in writing and then the Court will consider that as well.

"[APPELLANT]: Okay.

"THE COURT: Questions about any of that?

"[APPELLANT]: No.

"THE COURT: Anything you feel like you need to talk with your attorney about, before we get started?

"[APPELLANT]: No, thank you.

"THE COURT: Okay, so we'll go ahead and get started."

The state called witnesses who testified that appellant suffered from major depression with psychotic features and was a danger to herself. Appellant's counsel called appellant's husband as a witness; however, the trial court found that his testimony was "not helpful to the court." The trial court ultimately concluded that appellant suffered from a mental disorder and, as a result, was dangerous to herself. The court committed appellant to the custody of DHS for a period of up to 180 days.

ORS 426.100(1) requires a trial court conducting a civil commitment hearing to advise the allegedly mentally ill person of the reason for, nature of, and possible results of the hearing, as well as the person's rights to subpoena witnesses and be represented by counsel, including appointed counsel. The statute provides:

"At the time the allegedly mentally ill person is brought before the court, the court shall advise the person of the following:

"(a)   The reason for being brought before the court;

"(b)   The nature of the proceedings;

"(c)   The possible results of the proceedings;

"(d)   The right to subpoena witnesses; and

"(e)   The person's rights regarding representation by or appointment of counsel."

ORS 426.100(1).

In this case, although the court advised appellant of the reason for, nature of, and possible results of the hearing, and appellant's right to be represented by counsel, the court failed to advise appellant of her right to subpoena witnesses. Appellant argues that this constitutes plain error and requires reversal. We agree.

As we have held, to comply with ORS 426.100(1), "a trial court in a civil commitment proceeding must either advise the allegedly mentally ill person directly regarding those rights or conduct an examination on the record to determine whether a valid waiver of the right to be advised has been knowingly and voluntarily made." *State v. Ritzman*, 192 Or App 296, 298, 84 P3d 1129 (2004). A trial court's failure to advise a person as required or to determine whether the person has waived his or her right to be so advised, "is not only error, but it is plain error that we exercise our discretion to consider despite an appellant's failure to raise and preserve the issue at the hearing." *Id.*

Accordingly, we have held that plain error review of violations of ORS 426.100(1) is "justified by the nature of civil commitment proceedings, the relative interests of the parties in those proceedings, the gravity of the violation, and the ends of justice." *State v. S. J. F.*, 247 Or App 321, 325, 269 P3d 83 (2011). A civil commitment has serious consequences, and the purpose of ORS 426.100(1) is to ensure that, before an allegedly mental ill person suffers those consequences, he or she receives the benefit of a full and fair hearing; if a court does not provide a person with all of the information required by ORS 426.100(1), the person does not receive that benefit. *Id.* at 325-26. Thus, failure to provide a person with all of the information required by

ORS 426.100(1) constitutes an egregious error that justifies plain error review. *Id.* at 326.

Nevertheless, the state argues that we should not exercise our discretion to review the error in this case because, prior to the commitment hearing, the court issued and served on appellant a "Citation for Commitment Hearing" that included an advisement of rights as required under ORS 426.100(1). Thus, the state argues, any error was harmless.

To determine whether a trial court's failure to provide an allegedly mentally ill person with the information required by ORS 426.100(1) is harmless, we focus on whether the appellant received all of the information from another source. *Id.* at 327. In *Ritzman*, we held that the trial court's failure to advise the appellant of the information required by ORS 426.100(1) was harmless because the appellant had received a written notice that contained all of the required information, the notice had been read to her, and she had signed and dated it. 192 Or App at 299-301. In contrast, in *State v. N. S.*, 201 Or App 71, 74, 116 P3d 949 (2005), we held that the trial court's failure to advise the appellant of the information required by ORS 426.100(1) was *not* harmless because, although the appellant had been given a written citation that contained information similar to the required information, he had not signed or dated the citation. We explained that, "without an acknowledgement from appellant that he actually read the citation, we cannot conclude that he was adequately advised of his rights as we did in *Ritzman*." *Id.*

In this case, appellant was served with a "Citation for Commitment Hearing," signed and dated by the court clerk, and the record contains a return of service signed by the deputy who served the citation to appellant. The citation contained information similar to the advice required by ORS 426.100(1), including appellant's right to subpoena witnesses. However, as was the case in *N. S.*, the citation here was not signed and dated by appellant, and there is no acknowledgement in the record that appellant actually read the citation. Therefore, as in *N. S.*, we cannot conclude that

appellant was adequately advised of her right to subpoena witnesses.

Finally, we reject the state's contention that appellant was not prejudiced by the trial court's failure to advise her of her to right subpoena witnesses because her husband testified at the hearing and appellant's children were estranged from her. We are not persuaded that the error had no effect on the outcome of the hearing, particularly in light of the fact that appellant's husband's testimony was "not helpful to the court."

Thus, we conclude that the trial court violated ORS 426.100(1), we exercise our discretion to review the error as plain error, and conclude that the error was not harmless.

Reversed.