Submitted November 7, affirmed December 24, 2014

In the Matter of R. L. W.,
Alleged to be a Person with an Intellectual Disability.

STATE OF OREGON,
*Respondent,*

*v.*

R. L. W.,
*Appellant.*

Yamhill County Circuit Court
13CC00231; A154392

341 P3d 845

Susan D. Isaacs filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Carolyn Alexander, Senior Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

Pursuant to ORS 427.290, set out below, the circuit court committed appellant to the custody of the Oregon Department of Human Services for a period not to exceed one year. Appellant appeals, arguing that there is insufficient evidence in the record to support the commitment. We affirm.

ORS 427.290 authorizes a court to commit a person for care, treatment, or training upon determinations that (1) the person has an intellectual disability, (2) because of the intellectual disability, the person is either (a) "dangerous to self or others" or (b) "unable to provide for *** personal needs" and "not receiving care as is necessary for the health, safety, or habilitation of the person[,]" and (3) neither voluntary treatment and training nor a conditional release is in the person's best interest.[1] For the

---

[1] ORS 427.290 provides, in full:

"After hearing all of the evidence, and reviewing the findings of the investigation and other examiners, the court shall determine whether the person has an intellectual disability and because of the intellectual disability is either dangerous to self or others or is unable to provide for the personal needs of the person and is not receiving care as is necessary for the health, safety or habilitation of the person. If in the opinion of the court the person is not in need of commitment for residential care, treatment and training, the person shall be discharged. If in the opinion of the court the person has, by clear and convincing evidence, an intellectual disability and is in need of commitment for residential care, treatment and training, the court may order as follows:

"(1) If the person can give informed consent and is willing and able to participate in treatment and training on a voluntary basis, and the court finds that the person will do so, the court shall order release of the person and dismiss the case.

"(2) If a relative, a friend or legal guardian of the person requests that the relative, friend or legal guardian be allowed to care for the person for a period of one year in a place satisfactory to the court and shows that the relative, friend or legal guardian is able to care for the person and that there are adequate financial resources available for the care of the person, the court may commit the person and order that the person be conditionally released and placed in the care and custody of the relative, friend or legal guardian. The order may be revoked and the person committed to the Department of Human Services for the balance of the year whenever, in the opinion of the court, it is in the best interest of the person.

"(3) If in the opinion of the court voluntary treatment and training or conditional release is not in the best interest of the person, the court may order the commitment of the person to the department for care, treatment or training. The commitment shall be for a period not to exceed one year with provisions for continuing commitment pursuant to ORS 427.235 to 427.290.

purposes of ORS 427.290, "intellectual disability" is defined by ORS 427.005(10), which provides:

"(a) 'Intellectual disability' means significantly sub-average general intellectual functioning, defined as intelligence quotients under 70 as measured by a qualified professional and existing concurrently with significant impairment in adaptive behavior, that is manifested before the individual is 18 years of age.

"(b) An individual with intelligence quotients of 70 through 75 may be considered to have an intellectual disability if there is also significant impairment in adaptive behavior, as diagnosed and measured by a qualified professional.

"(c) The impairment in adaptive behavior must be directly related to the intellectual disability.

"(d) Intellectual disability is synonymous with mental retardation."

The circuit court committed appellant based on determinations that defendant has an intellectual disability and, as a result of the intellectual disability, he is a danger to both himself and others and unable to provide for his personal needs.

Appellant does not dispute that he has an intellectual disability. In a single assignment of error, he contends only that the evidence is insufficient to support the circuit court's determinations, which must be based on clear and convincing evidence, that he is a danger to himself and others and unable to provide for his personal needs. The state agrees that the evidence is insufficient and concedes that

---

"(4) If in the opinion of the court the person may be incapacitated, the court may appoint a legal guardian or conservator pursuant to ORS chapter 125. The appointment of a guardian or conservator shall be a separate order from the order of commitment."

A related statute, ORS 427.215, provides:

"For the purposes of ORS 427.235 to 427.290, a person with an intellectual disability is in need of commitment for residential care, treatment and training if the person is either:

"(1) Dangerous to self or others; or

"(2) Unable to provide for the person's basic personal needs and not receiving care as is necessary for the health, safety or habilitation of the person."

the court erred in committing appellant. For the reasons explained below, we disagree.

Whether evidence is legally sufficient to support a civil commitment is a question of law. *State v. D. M.*, 245 Or App 466, 468, 263 P3d 1086 (2011). We are bound by the circuit court's findings supported by evidence in the record. ORS 19.415(3)(b); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). In reviewing the court's findings, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

We are not bound by concessions of error; we have an obligation to make an independent determination of the appropriate disposition of a case. *State v. Bierstock*, 195 Or App 514, 518, 98 P3d 771 (2004). Thus, we are not bound by the state's concession that there was insufficient evidence to support to appellant's commitment, and—having reviewed the record under the applicable standard of review—we conclude that we cannot accept the concession.

Appellant has an intellectual disability. According to a psychological evaluation, he "has a full scale IQ of 59" and "is extremely low functioning, near the one percentile, compared to other people his age." Appellant also suffers from chronic paranoid schizophrenia, but, according to the record his schizophrenia is secondary to his intellectual disability, which is the primary reason for his inability to function in the community.

At the time of the commitment hearing, appellant was 32 years old, and he had been either incarcerated or involuntarily committed almost his entire adult life. He currently lives in a secured group home. According to the staff members of the group home, appellant is unable to care for himself due to his intellectual disability; he lacks basic life skills. His finances and medication are managed by the staff at the group home, and he is unable to participate in activities without staff support. Appellant is also vulnerable to danger due to his intellectual disability; because he is low

functioning, he has been sexually exploited in the past. And, finally, appellant has endangered others; he has engaged in aggressive, assaultive, and inappropriate sexual behaviors. For example, four months before the commitment hearing, appellant escaped from the group home and then hit two staff members when they tried to get him to return, conduct that resulted in criminal convictions for harassment. After that, appellant's medication was changed and, according to one staff member, appellant was no longer psychotic, but was still dangerous. At the group home, appellant is under the constant supervision of one to three people; even at night he is observed at 15 minute intervals.

Appellant argues that there is insufficient evidence that he is unable to provide for his personal needs. He points out that he has a source of income and a plan for when he is released; he receives Social Security Disability and would like to move out of the group home and find his father, who he claims is an American President, and be raised by him. Appellant also argues that there is insufficient evidence that he is a danger to himself or others. Although he hit two people four months before the commitment hearing, he contends that, at the time of the hearing, he "was fully medicated, and no longer presented a risk to himself or others."

Given the evidence in the record, we conclude that the circuit court did not err in committing appellant. Although appellant's condition improved with his medication change and he was no longer in active psychosis at the time of the commitment hearing, there was clear and convincing evidence upon which the court could conclude that appellant remained unable to provide for his personal needs due to his intellectual disability and that he was a danger to himself and others. Several witnesses testified that appellant is incapable of living independently and would not voluntarily live in a group home or take his medication. When appellant does not take his medication, he is unable to control his impulses and behaves violently, hitting people when he does not get what he wants. If he were to move out of his current residence, appellant could harm others and would be exposed to harm, including sexual exploitation. Accordingly,

we conclude that there is sufficient evidence in the record to support the circuit court's commitment order.

Affirmed.