Submitted September 21, 2022, resubmitted en banc March 3, reversed August 23, 2023, petition for review denied January 12, 2024  (371 Or 825)

In the Matter of T. C.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

T. C.,
*Appellant.*

Marion County Circuit Court
21CC05628; A177184

536 P3d 591

In this civil commitment case, the state did not personally serve appellant with the prehearing citation as required by ORS 426.090. Appellant did not preserve the error. The state argues that the error was harmless. *Held*: Under Court of Appeals case law, the trial court committed reversible error when it committed appellant when she had not been personally served with the citation as required by ORS 426.090. *State v. M. D. M. G.*, 311 Or App 240, 486 P3d 863 (2021). The court declined to depart from the approach taken in its case law. Hellman, J., wrote a concurring opinion, joined by Mooney and Jacquot, JJ. Powers, J., wrote a dissenting opinion, joined by Kamins and Pagán, JJ. Pagán, J., wrote a dissenting opinion, joined by Kamins, J.

Reversed.

En Banc

Matthew L. Tracey, Judge pro tempore.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Chief Judge, and Ortega, Egan, Tookey, Shorr, Aoyagi, Powers, Mooney, Kamins, Pagán, Joyce, Hellman, and Jacquot, Judges.

LAGESEN, C. J.

Reversed.

Lagesen, C. J., filed the opinion of the court in which Ortega, Egan, Tookey, Shorr, Aoyagi, Mooney, Joyce, Hellman, and Jacquot, JJ., joined.

Hellman, J., concurred and filed an opinion in which Mooney and Jacquot, JJ., joined.

Powers, J., dissented and filed an opinion in which Kamins and Pagán, JJ., joined.

Pagán, J., dissented and filed an opinion in which Kamins, J., joined.

**LAGESEN, C. J.**

This is a civil commitment case in which the state did not follow the statutory procedures that govern civil commitments. Specifically, the state did not provide appellant with the prehearing citation required by ORS 426.090. We took this case into full court to consider the state's argument that, contrary to our longstanding practice of viewing the state's violations of a civil committee's procedural rights as grounds for reversal of a civil commitment decision, we should view that omission as harmless. *See* ORS 19.415(2) (stating that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party"). We reject it.

The facts are few. Appellant was in jail on pending charges when an evaluator determined that she was unable to aid and assist in her defense and recommended that "she should receive restoration services at a hospital level of care[.]" The court, instead, initiated this civil commitment proceeding.[1] It appointed counsel to represent appellant and then issued a citation to appellant "c/o" her appointed attorney, although ORS 426.090 requires that "[t]he citation shall be served upon the person by delivering a duly certified copy of the original thereof to the person in person prior to the hearing." The record contains no evidence that the citation was provided to appellant before the hearing or that appellant's appointed counsel met with appellant in advance of the hearing.

After granting a continuance at the state's request, the court held the hearing on the citation. Before the hearing, appellant's appointed attorney filed a motion seeking to exclude appellant's statements in the precommitment investigation report on the ground that counsel had not been present for the investigation. The court denied the motion. At the hearing, appellant's attorney cross-examined the state's witnesses and argued that the evidence did not support

---

[1] It appears that the court may have issued the order initiating civil commitment proceedings on the request of the district attorney. The district attorney's name and mailing address is imprinted in the margin of the order. The record is silent as to how and why what started as an aid-and-assist evaluation and recommendation for restorative treatment transformed into a civil commitment proceeding.

commitment. Appellant indicated directly to the court that she wanted to call witnesses. After the court allowed appellant to confer with counsel off the record, counsel indicated upon resuming the hearing that she did not think additional time for consultation would assist appellant, and appellant did not call witnesses. The court ultimately committed appellant, finding that she was a danger to others. The court's order directed "that the Marion County Sheriff's Office will transport [appellant] to the Oregon State Hospital after any preexisting holds have cleared."

Appellant appealed. On appeal, she assigns error to the trial court's decision to conduct a civil commitment hearing in the absence of a citation that was issued in accordance with ORS 426.080 and ORS 426.090. She acknowledges that the error is not preserved but argues that it is plain and that we should exercise our discretion to correct it, something we routinely have done in similar cases. Appellant notes that prehearing notice is a core component of her due process rights, pointing out that

> "For a person to be prepared to meaningfully participate in their hearing, they must be served a citation with notice of the allegations against which they are expected to defend themselves, as well as notice of their rights, including their right to use a subpoena, so that they can meaningfully prepare a defense."

In response, the state concedes that the trial court erred by proceeding with the hearing where, as here, appellant was not personally served with the citation. The state nevertheless argues that we should not reverse because, in the state's view, "there was no violation of appellant's due process rights or any other harm to appellant." The state argues that "[a]ppellant was represented by counsel who had been apparently representing her for both the civil commitment and related criminal charges," and notes that the attorney had filed a motion to exclude appellant's statements in the investigation report, cross-examined witnesses at the hearing, and otherwise advocated for appellant during the hearing. That, in the state's view, precludes the conclusion that appellant suffered any harm from not being given prehearing personal notice of the civil commitment proceeding, as required by ORS 426.090.

We reject the state's argument. It undervalues the critical role prehearing personal notice plays in ensuring that a potential civil committee is prepared for a proceeding that can result in a severe deprivation of liberty. Our case law has long recognized the harm that inheres when people are not provided with fair notice of how and why their liberty may be taken away, and we decline to depart from that case law now.

Where the state seeks to civilly commit a person for any purpose, prehearing notice is a core component of the due process protections afforded by the Fourteenth Amendment to the United States Constitution: "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded," and must also advise "of the specific issues that [the person] must meet." *In re Gault*, 387 US 1, 33-34, 87 S Ct 1428, 18 L Ed 2d 527 (1967); *see Addington v. Texas*, 441 US 418, 425, 99 S Ct 1804, 60 L Ed 2d 323 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." (Citing *Gault*, among other cases.)). In Oregon, the legislature has codified that due process protection in ORS 426.090. That statute confers upon a "person alleged to have a mental illness" a right to prehearing, in-person, written notice of a proposed civil commitment proceeding, including the "specific reasons" for it:

> "The judge shall issue a citation to the person alleged to have a mental illness stating the nature of the information filed concerning the person and the specific reasons the person is believed to be a person with mental illness. The citation shall further contain a notice of the time and place of the commitment hearing, the right to legal counsel, the right to have legal counsel appointed if the person is unable to afford legal counsel, and, if requested, to have legal counsel immediately appointed, the right to subpoena witnesses in behalf of the person to the hearing and other information as the court may direct. The citation shall be served upon the person by delivering a duly certified copy of the original thereof to the person in person prior to the hearing. The person shall have an opportunity to consult with legal counsel prior to being brought before the court."

ORS 426.090.

Because of the central role ORS 426.090 plays in ensuring due process where, as here, the state has civilly committed someone without complying with it, we routinely have reversed. *State v. M. D. M. G.*, 311 Or App 240, 486 P3d 863 (2021); *State v. J. M.-G.*, 311 Or App 238, 487 P3d 876 (2021); *State v. J. A. N.*, 311 Or App 226, 486 P3d 65 (2021); *State v. C. T.*, 310 Or App 863, 485 P3d 312 (2021); *State v. J. R. W.*, 307 Or App 372, 475 P3d 138 (2020); *State v. R. E. J.*, 306 Or App 647, 474 P3d 461 (2020); *State v. R. E. F.*, 299 Or App 199, 447 P3d 56 (2019). We have done so even where, as here, no objection was raised to the failure to comply with ORS 426.090. This accords with our longstanding recognition that the state's failure to comply with an "integral part of [the] procedure" governing civil commitments is reversible error unless the record allows for the affirmative inference that the appellant waived the procedural protection at issue or, alternatively, received a functionally equivalent protection in a different form. *State v. Allison*, 129 Or App 47, 49-50, 877 P2d 660 (1994); *State v. D. B.*, 167 Or App 312, 316, 1 P3d 490 (2000) (trial court's failure either to conduct an examination on the record or to inform the appellant of his rights pursuant to ORS 426.100(1) was reversible error); *see also State v. Waters*, 165 Or App 645, 649-51, 997 P2d 279, *rev den*, 331 Or 429 (2000), *cert den sub nom Waters v. Oregon*, 532 US 1040, 121 S Ct 2003, 149 L Ed 2d 1005 (2001) (differentiating between errors that involve failure to comply with mandatory statutory procedures from other types of errors); *State v. Ritzman*, 192 Or App 296, 300-01, 84 P3d 1129 (2004) (trial court's failure to provide advice of rights required by ORS 426.100(1) was harmless error where record showed the appellant had received the required advice in writing).

As we explained in *Allison*,

"[i]nvoluntary commitment proceedings involve the possibility of a 'massive curtailment of liberty' and, thus, implicate due process protections. *Vitek v. Jones*, 445 US 480, 491, 100 S Ct 1254, 63 L Ed 2d 552 (1980). In Oregon, the legislature has developed the involuntary commitment procedures contained in ORS chapter 426. Those mandatory procedures are designed to ensure that all allegedly mentally ill persons get the benefit of a full and fair hearing before that person is committed."

129 Or App at 49-50. The Oregon Supreme Court has held that strict adherence to those procedures is what ensures that Oregon's civil commitment scheme, as a whole, comports with the federal constitution. *State v. O'Neill*, 274 Or 59, 65-66, 545 P2d 97 (1976) ("The state, when acting strictly as provided in ORS Chapter 426, may legitimately intrude on the privacy of an unfortunate individual if he is a 'mentally ill person' as defined in ORS 426.005."). Although an individual may waive the mandatory procedural protections afforded by ORS chapter 426, we generally have required the record to reflect that any waiver was knowing and voluntary. *D. B.*, 167 Or App at 315-16; *Allison*, 129 Or App at 50 (citing *State v. Meyrick*, 313 Or 125, 134, 831 P2d 666 (1992), for the proposition that the record must reflect a knowing and voluntary waiver of the mandatory procedural protections in ORS chapter 426, specifically in that case, the advice of rights required by ORS 426.100(1)). In *State v. May*, 131 Or App 570, 571, 888 P2d 14 (1994), for example, we held that the lack of an objection to the trial court's failure to provide the advice of rights mandated by ORS 426.100(1) did not waive the appellant's statutory right to receive that advice, where the record did not demonstrate a waiver on the record and, further, that the omission required reversal.

Here, as in *May*, the record does not evidence a waiver of appellant's right to personal prehearing notice. In fact, on this record, there is the distinct possibility that appellant was not made aware, ahead of the hearing, that the hearing was a civil commitment hearing, and not a hearing connected to her criminal case. Although the state speculates that appellant's civil commitment lawyer represented her in the criminal case, the aid-and-assist evaluation identifies a different lawyer as representing appellant in the criminal case. The record contains no indication that appellant met with her civil-commitment attorney in advance of the hearing; the transcript of the hearing tends to suggest that appellant's first encounter with her attorney was at the hearing itself. Had the court attempted to secure a waiver of appellant's right to prehearing notice to address its violation of ORS 426.090, then the record might permit the conclusion that the deprivation of appellant's right to personal prehearing notice was one that was harmless by

showing that appellant was apprised of the nature of the proceeding, had an opportunity to confer with her lawyer ahead of the hearing, and otherwise had a fair opportunity to prepare for it. But the court did not do so.

Arguing for a different result, the state points to *Ritzman*, 192 Or App at 300-01, in which we held that a trial court's failure to provide the advice of rights required by ORS 426.100(1) was harmless where the record demonstrated that the appellant had signed and dated a written copy of the same advice. The state argues that *Ritzman* stands for the proposition that not all procedural errors require reversal. The state points out—correctly—that appellant received the advice of rights required by ORS 426.100(1) at the start of the hearing, that appellant's lawyer acknowledged receiving the investigator's report detailing the reasons for the proposed commitment, and that appellant's lawyer actively litigated the case. Those facts, in the state's view, demonstrate that appellant had a full and fair hearing such that the failure to provide the prehearing notice required by ORS 426.090 should be deemed harmless.

The dissenting opinions would choose the route proposed by the state. We are not persuaded that we should proceed down that path.

First, it would depart from a now long line of cases deeming the failure to provide the prehearing notice, in the form of the citation required by ORS 426.090, reversible error, regardless of whether the error was preserved.[2] Although we agree with Judge Pagán that "[a] review for plain error should be the exception, not the rule," we have effectively treated civil commitment cases in which the state has failed to comply with mandatory procedural safeguards as an exception to the rule for a very long time now. 327 Or App at 583 (Pagán, J., dissenting). Also, unlike in *Ritzman*,

---

[2] Judge Pagán's dissenting opinion points out that some of these cases involved concessions of error, suggesting that they were the product of the agreement of the parties and cautioning against letting them "become the driving force behind the arc of our jurisprudence." 327 Or App at 581 (Pagán, J., dissenting). Our cases in which we accept a concession, however, reflect our own judgment on whether a concession is legally correct. *State v. R. L. W.*, 267 Or App 725, 728, 341 P3d 845 (2014) ("We are not bound by concessions of error; we have an obligation to make an independent determination of the appropriate disposition of a case."). The parties' agreement does not determine the outcome; our judgment does.

where the appellant had received the required advice in writing, notwithstanding the court's failure to deliver it in the manner required by statute, there is no evidence in this record that appellant *herself* was provided with any *prehearing* notice that would meet the requirements of ORS 426.090 or due process. Under ORS 426.090, appellant had a right to *personal* notice that the court was considering civilly committing her. Instead, as noted, the citation was issued to appellant "c/o" her appointed lawyer, a process that does not accord with ORS 426.090.[3] The lack of personal notice is a deprivation of a substantial right in and of itself. As noted, the lack of personal notice in a case like this one, in which the potential civil committee is incarcerated on pending charges, is particularly consequential because, without it, the person will have little reason to know that the civil commitment hearing is something different from the person's criminal case.

     Second, apart from straying from our consistent approach in cases in which an appellant's rights under ORS 426.090 were not honored, it would stray from our general approach in cases in which the other mandatory procedural rights have not been honored. Our historical approach is anchored in our understanding of the profound deprivation of individual liberty—both physical and reputational—that the state imposes when it civilly commits an individual. In the words of the United States Supreme Court:

> "We have recognized that for the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty, and in consequence requires due process protection. The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement. It is indisputable that commitment to a mental hospital can engender adverse social consequences to the individual and that whether we label this phenomena 'stigma' or choose to call it something else . . . we recognize that it

---

[3] Judge Pagán's dissenting opinion asserts that appellant "received a functionally equivalent protection in a different form." 327 Or App at 579 (Pagán, J., dissenting). But the protections to which the dissenting opinion refers appear to be additional procedural protections to which appellant was entitled as of right. We are not persuaded that those protections are the functional equivalent of the prehearing citation to which appellant was entitled, in view of the fact that the legislature required those procedural safeguards *in addition to* the notice required under ORS 426.090.

> can occur and that it can have a very significant impact on the individual."

*Vitek*, 445 US at 491-92 (internal citations and quotation marks omitted; ellipses in original). To safeguard the erroneous imposition of that profound deprivation of liberty, our court, as explained, has required either that an appellant's mandatory procedural rights be strictly honored or, in the event that they are not, that a knowing and voluntary waiver of those rights be made *by the individual* themselves, not the individual's lawyer. *D. B.*, 167 Or App at 315-16.

        *D. B.* is illustrative. There, we reversed an order of civil commitment where the appellant's lawyer purported to waive the reading of rights required by ORS 426.100 on the appellant's behalf. *Id.* at 316. We did so because the trial court had not examined the appellant on the record to ascertain whether that waiver was knowing and voluntary. *Id.* The approach proposed by the state and the dissenting opinions, which would allow for affirmance where the state has not honored a critical procedural right and the record does not reflect a knowing and voluntary waiver, would heighten the risk of an erroneous deprivation of liberty. That is because it would permit the state to, in effect, strip away a mandatory core procedural safeguard without requiring it to contemporaneously demonstrate that, notwithstanding the elimination of the safeguard, the proceeding could nonetheless proceed in a full and fair way.

        That is especially so in the circumstances present here, where the disregarded procedural safeguard is the precommitment notice provided by the ORS 426.090 citation. Contrary to the state's argument, and the dissenting opinions' conclusion, an examination of the hearing that occurred is a poor measure of the harm that may flow from the failure to provide adequate prehearing notice. As the United States Supreme Court explained in *Gault*, notice is what allows a person time to prepare for a proposed deprivation of liberty; that is why it must be given a reasonable time before the hearing. *See, e.g.*, *Gault*, 387 US at 33-34. Were we to accept the premise of the state and the dissenting opinions that a hearing that, on its face, appears full and fair, means any lack of prehearing notice was harmless,

even in the absence of an affirmative waiver, we would risk undermining the core value of the protection afforded by the notice requirement.

Taking a slightly different approach, Judge Powers's dissenting opinion suggests that appellant has not adequately demonstrated harm because appellant's explanation of the value of prehearing notice is phrased in generalities about the value of prehearing notice. 327 Or App 574 (Powers, J., dissenting). As we understand Judge Powers's approach, he would require a civil committee deprived of prehearing notice to create a record demonstrating how in particular the violation of the person's rights affected their ability to prepare for a hearing, should the person wish to seek reversal on the basis of that violation. That approach, in our view, would risk severely undermining the right to prehearing notice. It would risk transforming the state's mandatory statutory and constitutional obligations to provide prehearing notice into an obligation, on the part of a civil committee, to demonstrate that notice could have made a difference in every situation in which the state breaches those obligations. An approach like the one our court has taken historically—requiring the state to obtain a waiver or otherwise demonstrate affirmatively that it afforded comparable procedural protection in a different way—keeps the burden of compliance where the constitution and the legislature have placed it: on the state. Contrary to Judge Powers's suggestion, our approach is not akin to structural error. 327 Or App at 574 (Powers, J., dissenting). Under our historic approach, if the state obtains a waiver of a procedural right or demonstrates that it afforded a procedural protection that is functionally equivalent to an omitted one, then the state may well be able to demonstrate that, notwithstanding the state's failure to honor a particular right, that omission is not one that requires reversal.

*Purdy v. Deere and Company*, 355 Or 204, 324 P3d 455 (2014), on which Judge Powers's dissenting opinion relies, does not point a different direction. *See* 327 Or App at 573 (Powers, J., dissenting). At issue in *Purdy* was the standard for determining whether an instructional or evidentiary error in the context of a civil jury trial affected

a party's rights sufficiently to require reversal. 355 Or at 226-27. This case, in contrast, does not involve a question of evidentiary or instructional error. Rather, this is a case in which a proceeding went forward notwithstanding a violation of appellant's *right* to prehearing, in-person notice compliant with ORS 426.090—a right that in and of itself is a substantial one.

We long have recognized this principle in other contexts, too. Our decision in *Villanueva v. Board of Psychologist Examiners*, 179 Or App 134, 138, 39 P3d 238 (2002), explains clearly why the deprivation of adequate prehearing notice is a harm in and of itself:

> "Beyond that, we do not agree that the failure to give petitioner adequate notice of the charges he faced was not prejudicial. Rather, the absence of adequate notice is prejudicial in and of itself. That proposition finds recognition in both the criminal and civil law. The state may not try a criminal defendant for a crime for which he or she has not been charged. *State v. Wimber*, 315 Or 103, 113-15, 843 P2d 424 (1992) (amending indictment); *State v. Alben*, 139 Or App 236, 241, 911 P2d 1239, *rev den*, 323 Or 153 (1996). That is true without regard to whether the criminal defendant could have put on a defense to the uncharged crime. *Id.* Similarly, in a civil action, the parties are limited to the issues that are raised by the pleadings, unless they explicitly or impliedly consent to try additional issues. *See* ORCP 23 B; *Northwest Marketing Corp. v. Fore-Ward Investments*, 173 Or App 508, 512-13, 22 P3d 1230 (2001); *Cheryl Wilcox Property Management v. Appel*, 110 Or App 90, 93-94, 821 P2d 428 (1991). We see no reason why similar principles should not apply when an agency charges a licensee with violating his or her profession's ethical rules. Indeed, as we explained in our initial opinion, the context of ORS 183.415(2) supports our conclusion that the failure to give adequate notice is itself prejudicial."

*Id.* (internal footnotes omitted).

Again, absent a waiver on the record, it is difficult to gauge from the face of a hearing the degree to which additional preparation time could have affected the outcome.[4]

---

[4] In *State v. K. R. B.*, 309 Or App 455, 482 P3d 134 (2021), we assumed without deciding that service of an otherwise-compliant citation immediately before the hearing would violate ORS 426.090. *Id.* at 457-58. We deemed that potential

Beyond that, we do not view it as our role to speculate, on behalf of the state, that appellant's case would not have been any different if the state had honored her procedural rights. Although sometimes we might guess about that correctly, sometimes we will guess incorrectly and, in our view, the approach we take should be the one that offers the individual the highest level of protection against the risk of the erroneous deprivation of liberty that can occur when the state fails to comply with mandatory procedural safeguards.

Returning to Judge Pagán's dissenting opinion, it suggests that this approach is impractical. *See* 327 Or App at 580 (Pagán, J., dissenting). We disagree. The procedural safeguards to which the state must adhere to civilly commit an individual are neither onerous nor complex. The liberty interest they protect is of the highest order. And, in the event that the state fails to comply with one or more of those safeguards, the state or the court can seek a waiver on the record from the subject of the civil commitment. Accordingly, we are not persuaded to depart from our well-traveled course of reversing in civil commitment cases where, as here, the mandatory procedural safeguards were not adhered to in full, where the omitted safeguard was not waived on the record, and where the committed person did not receive the same safeguard (in this instance, prehearing notice with the information required by ORS 426.090) in a different form.

One other point bears mentioning. As mentioned, the court initiated this civil commitment proceeding after an evaluator determined that appellant was unable to aid and assist in her criminal case and was in need of restorative services. Under those circumstances, it might be easy to think that the state's omission of personal prehearing notice should be forgiven; after all, how could that notice make any difference to a person who lacks the capacity to aid and assist in a criminal case? And, as a factual matter,

error in timing harmless where the record did not indicate that delay "caused appellant or counsel not to be informed of the bases for the commitment or not to have adequate time or information to prepare for the hearing." *Id*. at 458. Here, by contrast, the citation was never served on appellant although she had a right to service in person. Under those circumstances, in view of *Gault*'s explanation of the role prehearing notice plays in ensuring due process, we are not prepared to say the complete deprivation of that critical right was harmless.

it might not. But the rule of law requires the state to act as if it can make a difference, so as to safeguard against the erroneous deprivation of liberty, one of the gravest injuries the state can inflict.

For all those reasons, we conclude that the court erred when it committed appellant when she had not been served with the citation required by ORS 426.090. Although the error was not preserved, under our case law, it is plain. We therefore exercise our discretion to correct it for all of the same reasons we have done so in our prior cases: "the nature of civil commitment proceedings, the relative interests of the parties in those proceedings, the gravity of the violation, and the ends of justice." *State v. S. J. F.*, 247 Or App 321, 325, 269 P3d 83 (2011). As discussed, civil commitment proceedings deprive an individual of physical and reputational liberty. The violation—deprivation of in-person prehearing notice—was grave, and appellant did not waive that right. In our view, the ends of justice warrant its correction.

Reversed.

**HELLMAN, J.,** concurring.

I concur in the majority's opinion. I write separately because footnote four and the majority's treatment of *State v. K. R. B.*, 309 Or App 455, 482 P3d 134 (2021) raise an important issue that is beyond the scope of our decision today, but that may need to be addressed in a future case.

In my view, the importance of prehearing service in commitment cases is best understood not as a ministerial issue of *timing*, but as an issue of *opportunity*. That includes the opportunity for the person to learn why the state wants to deprive them of liberty, to consult with counsel and prepare for the hearing, and to choose or decline offered mental health treatment. A notice that is served immediately prior to or during the hearing does not allow the opportunity for those kinds of things to happen. Moreover, at that point, obtaining the constitutionally guaranteed opportunity becomes conditioned on the trial court's discretion to allow a continuance of the hearing, which inappropriately elevates other considerations over the basic due process rights that a person has in these situations. Thus, in my view, service

immediately before or during the hearing suffers from the same constitutional problems as lack of service altogether.

This case does not engage with or resolve that question, and properly so. We were not presented with an explicit argument to overrule *K. R. B.* And resolution of this case, in which the appellant received no notice at all, does not require us to determine whether there is a materially and legally significant difference between notice that was not served and notice that was served minutes before the hearing. But under the majority's legally correct understanding of the importance and scope of the *pre*hearing notice requirements to satisfy due process, I question the continuing viability of *K. R. B.* With those observations, I concur.

Mooney, J., and Jacquot, J., join in this concurrence.

**POWERS, J.,** dissenting.

In my view, because ORS 19.415(2) applies to the failure to personally serve appellant with the citation as required by ORS 426.090, appellant must demonstrate that that error had a detrimental influence on her rights. I would conclude that appellant has not done so under the circumstances of this case. Accordingly, I respectfully dissent.

ORS 19.415(2) provides: "No judgment shall be reversed or modified except for error substantially affecting the rights of a party." Thus, consistent with that legislative command, an appellate court must affirm a judgment despite a trial court error in a similar manner to the analysis that Article VII (Amended), section 3, of the Oregon Constitution requires.[1] *State v. Davis*, 336 Or 19, 29 n 7, 77 P3d 1111 (2003); *see also id*. at 32 (explaining that "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular

---

[1] Article VII (Amended), section 3, provides, in part:

"If the [reviewing court] shall be of [the] opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the [reviewing] court shall be of [the] opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to [a reviewing] court."

error affected the verdict?"). The standard required by ORS 19.415(2) is a high one: the "error must—in an important or essential manner—have materially or detrimentally influenced a party's rights; it is insufficient to speculate that the error might have changed the outcome in the case." *Purdy v. Deere and Company*, 355 Or 204, 225, 324 P3d 455 (2014). As the Supreme Court has explained:

> "[A]n error 'affecting' a party's rights is an error that can be said to 'produce a material influence' or 'to have a detrimental influence' on those rights, and not merely one that 'might' have changed the outcome of the case. The use of the adverb 'substantially' further limits the type of error that can result in reversal of a judgment. 'Substantially' means 'in a substantial manner,' and the relevant definition of 'substantial' is 'being of moment: IMPORTANT, ESSENTIAL.'"

*Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 173, 61 P3d 928 (2003) (capitalization and internal quotation marks in original; citation and emphasis omitted).

Importantly, ORS 19.415(2) requires the party asserting the error to demonstrate that the error had the required prejudicial effect. *Purdy*, 355 Or at 225; *see also id*. at 234 n 11 (Balmer, C. J., concurring) (explaining that "the appellate court will conduct its review as to whether the error 'substantially affect[ed]' the appellant's rights based on the record before it—and if the record includes nothing that would permit the appellate court to reach that conclusion, the result will be affirmance" (internal quotation marks and bracketed text in original)). Both *Purdy* and *Shoup* articulate that the standard adopted by the legislature in ORS 19.415(2) applies "in every case" and that an appellate court may reverse or modify a judgment only if it can be determined "from the record" that the error substantially affected a party's right. *See Purdy*, 355 Or at 228; *Shoup* 335 Or at 173-74.

In my view, because it is undisputed that ORS 19.415(2) applies to the failure to provide appellant with the prehearing citation required by ORS 426.090, appellant must demonstrate that the error—*viz*., providing her attorney with the citation rather than her personally—had the required prejudicial effect under the circumstances

presented in the case. In her opening brief, appellant's only contention that the error was not harmless relied on generalities:

> "For a person to be prepared to meaningfully participate in their hearing, they must be served a citation with notice of the allegations against which they are expected to defend themselves, as well as notice of their rights, including their right to use a subpoena, so that they can meaningfully prepare a defense."

That argument, in my view, is insufficient to carry the burden mandated by ORS 19.415(2). *See Shoup*, 335 Or at 173 (observing that ORS 19.415(2) "protects the trial court judgment from reversal or modification 'except for' error substantially affecting a party's rights, indicating that reversal of a judgment is the exception, not the rule" (internal quotation marks in original)). That is especially so under the circumstances of this case where appellant's attorney filed a pretrial motion, objected to the state's request for a continuance, and reviewed documents prior to the hearing despite appellant not personally receiving the statutorily required prehearing citation. Further, the trial court engaged with appellant by explaining the required advice of rights mandated by ORS 426.100 and neither appellant, nor appellant's attorney, drew the court's attention to the lack of personal service of the citation required by ORS 426.090.[2] The majority opinion, in my view, conflates the violation of ORS 426.090 itself with appellant's burden to demonstrate that the violation of ORS 426.090 had the required prejudicial effect. I understand those to be separate inquiries. *See Ryan v. Palmateer*, 338 Or 278, 295-97, 108 P3d 1127, *cert den*, 546 US 874 (2005) (discussing why "structural error" is not a useful analytical tool and adhering to the harmless error standard articulated in *Davis*); *State v. Barone*, 329 Or 210, 226, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000)

---

[2] Indeed, the majority opinion's interpretation of the statutory requirement for personal prehearing notice as an unwaivable right that cannot be remedied by, for example, an appellant requesting additional time to prepare for the hearing is inconsistent with how we have treated the similar notice requirement in criminal proceedings. *See, e.g.*, *State v. Antoine*, 269 Or App 66, 84, 344 P3d 69, *rev den*, 357 Or 324 (2015) (explaining that, "although defendant lacked adequate notice of the charges against him, his lack of notice was something that he should have attempted to cure by moving to require the state to make its election before trial").

(explaining that the court "has not adopted the doctrine of 'structural' or 'systemic' error in analyzing questions of Oregon law").

Finally, it is worth noting that, like the observations in the majority opinion, I agree that ORS 426.090 confers an important prehearing right to receive in-person written notice. Whether deprivation of that right, however, reaches the threshold set in ORS 19.415(2) of "substantially affecting" appellant's rights will depend on the circumstances of each case. In cases where the citation required by ORS 426.090 was not provided at all, demonstrating that the error was prejudicial could arise from, for example, the lack of notice preventing the person from hiring an attorney or having legal counsel immediately appointed, preparing a specific response to the reasons for the hearing or advocating for a particular outcome, or misapprehending the right to subpoena witnesses. In this case, however, where that written notice was given to appellant's attorney—instead of personally to appellant—the burden of demonstrating that appellant not personally receiving the citation detrimentally influenced her rights is more nuanced, especially where appellant's counsel filed a pretrial motion, objected to the state's request for a continuance, and reviewed documents prior to the hearing.

In short, after evaluating the arguments made by appellant in her opening brief to demonstrate reversible error under ORS 19.415(2) and the circumstances of this case, I would conclude that she has not demonstrated the required prejudicial effect.

Accordingly, I respectfully dissent.

Kamins, J., and Pagán, J., join in this dissent.

**PAGÁN, J.,** dissenting.

Appellant was in jail at the time of her civil commitment hearing. When the precommitment investigator interviewed appellant, she "was naked, lying on her cell floor, with a blanket on her legs. Her cell was flooded and the blanket appeared wet." Appellant yelled profanities at the investigator during the entire interview. Appellant

needed help and treatment, which was not likely to occur in the maximum-security unit at the Marion County Jail. *See Addington v. Texas*, 441 US 418, 428, 99 S Ct 1804, 60 L Ed 2d 323 (1979) ("In a civil commitment state power is not exercised in a punitive sense.").

Relying on the investigator's report, the trial court issued a citation for a civil commitment hearing and appointed an attorney to represent appellant.[1] On the same day, focusing on appellant's right to due process, appellant's attorney filed a motion requesting notice of interviews with appellant and objecting to the use of unadvised statements made to any precommitment investigator. Appellant's attorney also objected to the state's motion for a continuance of the civil commitment hearing.

Now, on appeal, based on the same due process considerations, the majority opinion reverses appellant's judgment of civil commitment because there is no indication in the record that the citation was personally served on appellant as required by the penultimate sentence of ORS 426.090. The majority opinion requires strict compliance with that requirement, even though appellant was in custody at the time, did not preserve the error below, and the error caused no discernible harm. In deciding whether to exercise our discretion to reverse, I would adopt an approach that is consistent with how we typically assess the impact of unpreserved errors in civil and criminal cases.

In determining whether appellant had a "reasonable opportunity to prepare" for the hearing, *In re Gault*, 387 US 1, 33, 87 S Ct 1428, 18 L Ed 2d 527 (1967), we should consider appellant's circumstances and condition at the time her civil commitment proceeding began. In September 2021, appellant was arrested and charged with harassment. The arrest occurred after police responded to a call from appellant's adult son who stated that appellant was naked and attempting to break into his bedroom. After a brief struggle with police officers, appellant

---

[1] The state suggests that the appointed attorney in the civil commitment proceeding also represented appellant in her criminal case. The record does not support that claim. Instead, the record shows that two different attorneys were involved.

was detained and lodged at Marion County Jail. At her arraignment, appellant exhibited strange behavior, such as claiming that she was standing behind herself, "intermittently refusing to speak, stating that she is God, and shouting at the Judge when her charging document was read aloud." Appellant's defense attorney referred appellant for an evaluation due to the attorney's concerns about appellant's ability to aid and assist in her defense. When interviewed by a psychologist, appellant did not appear to understand that she was in jail.

The precommitment investigator, who conducted her first interview of appellant shortly before the citation was issued, described appellant's behavior as "[i]rritable, intrusive, impulsive, distractible, with poor eye contact, and largely uncooperative. [Appellant's speech] was hyperverbal, increased rate, loud volume and profane. She had disorganized speech and illogical thinking. She presented as delusional and psychotic." According to the investigator, appellant "remained lying on the floor the entire interview and yelled and screamed for the duration of the interview yelling profanities at this investigator." Under those circumstances, it is not clear that personally serving the citation on appellant would have accomplished much towards providing her with a fair process. Nevertheless, appellant's court-appointed attorney prepared for the hearing, including by objecting to the state's request for a continuance, by filing a pretrial motion regarding precommitment investigations, and by reviewing documents. Thus, even without personal service of the citation, appellant's due process rights were protected, and she was afforded—through the work of her attorney—a reasonable opportunity to prepare for the hearing.

Relying on a policy of "strict adherence" to the involuntary commitment procedures contained in ORS chapter 426, the majority opinion reverses the judgment of civil commitment. 327 Or App at 564. Certainly, trial courts must strictly comply with those procedures, including the requirement of personal service of the citation. *See State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976) (reviewing *de novo* whether the appellant should have been involuntarily committed).

However, it is less clear that we should automatically reverse whenever there is a failure to strictly comply with those procedures, especially when the error was not preserved.

In *State v. Waters*, 165 Or App 645, 650, 997 P2d 279, *rev den*, 331 Or 429 (2000), *cert den sub nom Waters v. Oregon*, 532 US 1040, 121 S Ct 2003, 149 L Ed 2d 1005 (2001), we declined to exercise our discretion to reverse for failure to comply with ORS 426.120(1)(c), which requires examiner's reports to be written under oath. As we explained,

> "One of the primary purposes of the preservation requirement is to permit lower courts the opportunity to correct their own errors. Had appellant brought this error to the trial court's attention, the error could easily have been avoided. As to the gravity of the error, appellant does not contend that the error was anything other than a technical one; he does not call into question the substance of the examiners' reports, and he does not assert that the error affected the outcome of the case in any way. Under the circumstances, we do not exercise our discretion to correct the trial court's error in receiving the examiner's signed but unsworn reports."

*Id.* at 650; *see also State v. Maxwell*, 164 Or App 171, 172, 988 P2d 939 (1999), *rev den*, 330 Or 71 (2000) (declining to reverse a civil commitment order because the error was not preserved).

A similar analysis should apply here. If appellant or her attorney were concerned about the failure to effect personal service of the citation, then they could have raised that concern at the beginning of the hearing, and the error could have been corrected. But they did not do so. Instead, at the beginning of the hearing, appellant's attorney pointed out that she was missing some pages from the reports associated with appellant's arrest. Shortly thereafter, when advising appellant of her rights, the trial court stated that the courtroom could be cleared if there was anything appellant wanted to discuss with her attorney. During those preliminary stages of the hearing, neither appellant nor her attorney objected to the failure to personally serve the citation. Their lack of concern weighs against exercising our discretion to reverse based on that error. *See State v.*

*Inman*, 275 Or App 920, 935, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) ("[T]he ease with which any error could have been avoided or corrected should be a significant factor in an appellate court's decision whether to exercise its discretion to correct a plain, but unpreserved, error."). Indeed, it could be argued that our adherence to a strict compliance approach for such technical failures creates an incentive for litigants to avoid alerting the trial court to any such errors, lest they be easily corrected.

In *State v. K. R. B.*, 309 Or App 455, 458, 482 P3d 134 (2021), a case in which the citation was not served until the beginning of the hearing, we did not exercise our discretion to correct the error, if any, because there was no indication that "the delay in service of the citation caused appellant or counsel not to be informed of the bases for the commitment or not to have adequate time or information to prepare for the hearing." *Id*. Furthermore, there was nothing in the record to suggest that "service of the citation at the commencement of the hearing caused appellant not to receive the benefits of a full and fair hearing." *Id*.

Here, unlike in *K. R. B.*, there is no evidence that the citation was ever personally served on appellant. Nevertheless, if the purpose of doing so is to make sure that the appellant has a reasonable opportunity to prepare for the hearing, then it is not clear why personal service of the citation at the beginning of the hearing makes a difference. Obviously, it does not allow a person time to prepare for the hearing, nor does it strictly comply with ORS 426.090, which requires personal service "prior to the hearing." Indeed, here, appellant may have been *better prepared* for her hearing than the person alleged to be mentally ill in *K. R. B.*, because appellant's attorney was actively taking steps before the hearing to protect appellant's due process rights, including by objecting to a request for a continuance, by reviewing documents, by taking note of what she was missing, and by filing a prehearing motion regarding precommitment investigations.

Put another way, even though there was no personal service of the citation, appellant "received a functionally equivalent protection in a different form." 327 Or App

at 563. The steps taken by her attorney before the hearing show that the attorney was acting to protect appellant's due process rights. Furthermore, at the beginning of the hearing, which appellant attended by videoconference, the trial court explained the nature of the proceeding, advised appellant of her rights, and explained the possible results of the hearing as required by ORS 426.100(1). Thus, even though she did not personally receive the citation, appellant was "otherwise adequately aware" of her rights. *State v. Ritzman*, 192 Or App 296, 299, 84 P3d 1129 (2004).

Regarding appellant's right to subpoena witnesses, at one point during the hearing, appellant mentioned the names of several sheriff's deputies or law enforcement officers. Once appellant mentioned their names, the trial court immediately went off the record to provide appellant's appointed attorney the opportunity to discuss the issue of witnesses with her. After a recess, the attorney indicated that more time with appellant would not assist her. When the hearing continued, appellant did not call witnesses, but she did provide her own testimony. On that record, we have no basis from which to reasonably infer that appellant would have subpoenaed witnesses if she had been personally served with the citation prior to the hearing. *Cf. State v. M. L. R.*, 256 Or App 566, 571-72, 303 P3d 954 (2013) (determining that the failure to advise the appellant of her right to subpoena witnesses was not harmless because we could not conclude that she received the information from another source, and the error may have impacted the outcome of the hearing because the testimony of the appellant's husband was not helpful, and her children did not testify).

I do not mean to devalue or undermine the importance of the procedural safeguards that the legislature has put in place to protect persons alleged to be mentally ill. The trial court's failure to effect personal service of the citation, as required by ORS 426.080 and ORS 426.090, was error, but, at the same time, we must decide whether to exercise our discretion to consider and correct an unpreserved error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). In doing so, we should not ignore the practical effect of the error. Other than pointing to the seriousness of

civil commitment hearings, appellant identifies no discernible harm that she suffered as a result of the failure to serve the citation.[2] At her civil commitment hearing, appellant's son testified that "she is not in the right state of mind at all. Like her mind is completely broken right now. She was tearing apart my apartment last time she was here." By entering a judgment committing appellant to the Oregon Health Authority for a period not to exceed 180 days, appellant was certainly more like to receive the care and treatment she needed than in the Marion County Jail.

The majority points to the "long line of cases deeming the failure to provide the prehearing notice, in the form of the citation required by ORS 426.090, reversible error." 327 Or App at 565. However, in many of those cases, the state conceded that the judgment of civil commitment should be reversed. *See State v. M. D. M. G.*, 311 Or App 240, 241, 486 P3d 863 (2021) ("The state concedes that the error constitutes plain error and that this court should reverse."); *State v. J. M.-G.*, 311 Or App 238, 239, 487 P3d 876 (2021) (same); *State v. J. A. N.*, 311 Or App 226, 227, 486 P3d 65 (2021) (same); *State v. R. E. F.*, 299 Or App 199, 200, 447 P3d 56 (2019) (same). In others, no citation was issued. *See J. A. N.*, 311 Or App at 227 ("In this case, the error is even more glaring, given that the citation never issued at all."); *State v. C. T.*, 310 Or App 863, 864, 485 P3d 312 (2021) ("As the state concedes, we have found reversible plain error in situations where no citation was issued."). While a court should respect when the parties before it agree on a particular disposition, we should be cautious about allowing those instances to become the driving force behind the arc of our jurisprudence. If the driving force is, rather, the call to ensure that litigants receive due process, we should be encouraging the parties and the trial courts to inquire about the practical effects of any procedural shortcomings

---

[2] Generally, appellants are not permitted to file reply briefs in civil commitment cases, but appellant could have sought permission to file a reply brief to respond to the state's harmless error argument. ORAP 5.70(3)(a)(iii). As Judge Powers observes, ORS 19.415(2) requires that an error affect the proceeding, a component that is also fundamental to our plain-error review. 327 Or App at 572-73 (Powers, J., dissenting). *See, e.g.*, *State v. Horton*, 327 Or App 256, 264, 535 P3d 338 (2023) (In determining whether to exercise discretion, "[t]he likelihood that the error affected the outcome goes to its 'gravity' and to 'the ends of justice.'").

before proceeding. The majority's approach does not encourage such an inquiry.

Here, the citation was issued, and the state does not concede that we should exercise our discretion to reverse. In that circumstance, it behooves us to review the record and reflect upon the practical effect of the unpreserved error. A focus on strict compliance with the personal service requirement risks short-circuiting that analysis. As we explained in *State v. S. R.-N.*, 318 Or App 154, 161, 506 P3d 492 (2022), when discussing the similar, although not identical, procedural safeguards set forth in ORS chapter 427, although the procedures "aim to *ensure* due process, it is not necessarily true that the failure to satisfy those procedures *denies* due process; that is, a constitutionally significant deprivation of due process requires an assessment of the risk that a procedural failure resulted in the commitment." (Emphases in original.)

Although the concerns underlying proper service speak to procedural due process, the manifestation of due process is, ultimately, a proceeding that can be said to represent the parties' best attempts at presenting their evidence and arguments to the adjudicator. In this case, there is no indication that the decision to commit the appellant to the Oregon Health Authority for a period of time was affected by the failure to personally serve the citation. Instead, after considering the evidence, which included testimony from a licensed psychologist, a certified mental health investigator, and an appointed examiner, as well as hearing testimony from appellant and her son, and after considering the arguments of counsel, the trial court concluded that appellant met the statutory criteria for a mental illness and that she was in need of treatment. ORS 426.130(1)(a)(C).

Indeed, the trial court came close to deciding that the state failed to meet its burden of showing that a civil commitment was necessary. The trial court did not find, by clear and convincing evidence, that appellant posed a danger to herself or that she was unable to meet her basic needs. ORS 426.005(1)(f). However, the trial court did find, by clear and convincing evidence, that appellant suffered from schizophrenia and that she posed a danger to others.

*Id.* Based on this record, there is no reason to believe that appellant was denied the opportunity to fully prepare for her civil commitment hearing as a result of the failure to effect personal service of the citation on her while she was in custody in the Marion County Jail.

A review for plain error should be the exception, not the rule. *State v. Taylor*, 295 Or App 32, 36, 433 P3d 486 (2018). Here, focusing on appellant's circumstances, condition, and the prehearing steps taken by her attorney to protect her due process rights, and because the failure to personally serve the citation was an unpreserved error that did not result in any discernible harm to appellant, we should not exercise our discretion to reverse the judgment of civil commitment.

I respectfully dissent.

Kamins, J., joins in this dissent.